Cannon *v.* Cannon.

## CANNON vs. CANNON.

1. A contract which contravenes the provisions or policy of a public law, is void; but a transaction to be void in law as a contract, must first have life as a completed treaty between the parties.

2. Putting the title to one's lands in the name of another, with the avowed purpose of escaping liability to be drafted, under the late enrollment act of Congress, was not in contravention of either the policy or provisions of that act, no property qualification having been thereby required to make one liable to be drafted; hence, that act, of itself, does not deprive such grantor of the right to compel a reconveyance of the property to him.

3. If a grantor invests his grantee with title to his lands, by appropriate instruments, executed with the requisite legal formality, the deed is his solemn act, done in the exercise of a legal power, and he will not be allowed to gainsay, impeach, or destroy it. But the legal formalities must be complete; a mere signing and acknowledging a deed, when it is intended to be voluntary, passes no title to the grantee.

4. It is not necessary, to make a delivery of a deed, that it should be actually handed over to the grantee, or to another person for him; but where there is no actual transfer, it must satisfactorily appear, either from the circumstances of the transaction, or the acts or words of the grantor, that it was his intention to part with the deed.

5. A, with his wife, executed voluntary deeds to B and C, without their ·knowledge. He gave the deeds to his wife, telling her to be careful of them, without other instructions, or any authority to deliver them. During his absence from home, and without his knowledge or consent, his wife induced B and C to convey the property to her. *Held,* that the deed from B and C was a nullity.

On bill, answer and proofs.

*Mr. Gilbert Collins,* for complainant.

*Mr. James W. Vroom,* for defendant.

THE VICE-CHANCELLOR.

The decision of this case involves the solution of a single question: Were the deeds from the complainant to Bagley and Mullen delivered? Delivery is absolutely essential to give effect to a deed; until delivery is made, it has no life or force as a contract. The suggestion, that the court should leave the complainant where it finds him, because his purpose in making the deeds was to escape liability to be drafted as a soldier into the service of the federal government, cannot be entertained now, for that objection cannot be interposed until it is first determined there was a contract. A contract which contravenes the provisions or policy of an act of Congress, is unquestionably void, but a transaction to be void in law, as a contract, must first have life as a completed treaty between the parties.

Contrary to my first impression, I am of opinion the court cannot refuse the complainant relief, if upon the case made he is otherwise fairly entitled to it, because his avowed purpose in executing the deeds was to escape liability to be drafted, for the means he employed to attain his purpose were utterly futile, as much so as if he had changed the color of his coat, or the style of his shoes, with design thereby to avoid conscription. Putting the title to his lands in the name of another, did not contravene either the policy or provisions of the enrollment act; no property qualification was required; the chief object of the act was to get strong, vigorous men as soldiers; whether they had title to real estate or not, was as unimportant to the law and to the government as the color of their hair.

As already stated, the decision of this case simply requires an answer to the question, were the deeds of the complain-

ant, to Bagley and Mullen, rendered effectual as deeds, by delivery? If they were, he cannot be allowed to impeach them, nor assail the title of his wife. He executed them voluntarily, free from the influence of any artifice, fraud, or improper conduct on the part of the grantees, and although it may be difficult to assign a sensible reason for his act, when it is remembered the property conveyed constituted nearly his whole estate, that he had a wife and child, and that his gift was made to persons who, so far as the evidence gives any light, were without claim to his duty, bounty, or friendship; yet, if he has invested them with title to these lands, by appropriate instruments, executed with the requisite legal formality, the deeds are his solemn acts, done in the exercise of that power which the law gives every man over his property, and he will not be allowed to gainsay, impeach, or destroy them.

The facts which must govern the decision of the question stated, are: The complainant, in December, 1863, held the title to two lots in the city of Hoboken. On the 18th of that month he conveyed one to Julia Bagley, his cousin, and then a minor, and on the next day he conveyed the other to Ann Mullen, a distant relative of his wife, and, at that time, also a minor. His wife joined in the execution of both deeds; the grantees were not present at their execution. The complainant says he told Bagley of his intention to put the property in her name, but Mullen was not informed of the complainant's intention, nor did she know of the existence of the deed to her, until July, 1866, when the complainant's wife procured a conveyance to herself from Mullen, for this lot. It is hardly necessary to add, these deeds were not made pursuant to any contract, and were without consideration of any kind. The complainant states his object in making them, to be, "I was told to put the property in the names of Bagley and Mullen, and that would prevent my being drafted, as I would not be the owner of property." After they were signed and acknowledged, the complainant left them in his house, and told his wife to be careful of them.

His wife says he gave them to her; that she had charge of them, and took care of them; but she does not claim she received any instruction as to the disposition to be made of them, or authority to deliver them. She says: "This property was given to Ann Mullen and Job Bagley, so as he would have no call to it, and so I could sell it if I wanted to. I understood that the property was mine; he said nothing when he was giving it up."

The complainant left his home in Hoboken, in July, 1864, and went to California, where he remained until the winter of 1872. In July, 1866, the complainant's wife induced Bagley and Mullen to convey the lots to her. This conveyance was made without consideration, and simply upon Mrs. Cannon's request. Up to that time Mullen did not know the title stood in her name. Neither Bagley nor Mullen made any claim to the property, and both evinced, by the alacrity and willingness with which they conveyed to Mrs. Cannon, they were unconscious of any right to or interest in it. None of the deeds were recorded until October, 1866; those to Bagley and Mullen were recorded October 31st, 1866, and that from Bagley and Mullen to Mrs. Cannon, October 6th, 1868.

The relief sought is an adjudication that no title passed to Bagley and Mullen by the deeds drawn to them, because they were not delivered, and in consequence of their want of title, their deed to Mrs. Cannon is a nullity.

To make delivery of a deed, it is not necessary it should actually be handed over to the grantee, or to another person for him. It may be effected by words without acts, or by acts without words, or by both acts and words. Indeed, it may be made though the deed remains in the custody of the grantor. Thus, if both parties are present when the usual formalities of execution take place, and the contract is fully carried out, and nothing remains to be done except the empty ceremony of passing the deed from the grantor to the grantee, the law, regarding the substance, and disregarding mere form, will adjudge the title has passed to the grantee, and that the

deed is good and valid to him though it should remain in the custody of the grantor. However, in cases where there is not an actual transfer of the deed, it must satisfactorily appear, either from the circumstances of the transaction, or the acts or words of the grantor, that it was his intention to part with the deed and put the title in the grantee. *Crawford* v. *Bertholf, Saxton* 467; *Folly* v. *Vantuyl,* 4 *Halst.* 158; *Farlee* v. *Farlee,* 1 *Zab.* 285; *Garnons* v. *Knight,* 5 *Barn. & Cress.* 687; 4 *Kent's Com.* 505.

Chancellor Zabriskie, in *Armstrong* v. *Armstrong,* 4 *C. E. Green* 358, held, even where the grantor of a voluntary deed to his child had directed the scrivener to have the deed recorded, and paid him the recording fees, there was no delivery to the child, nor to any person for the child, and nullified the deed.

Mrs. Cannon stands in no stronger position than Bagley and Mullen would occupy if she had made tradition of the deeds to them without authority, or if they had obtained them without her consent; she stands in the right of their title; no higher and no better; if they had none, she has none. If they could not hold these lands against the complainants, she cannot. I do not think there is room for two opinions upon the facts of the case, under the rule of law uniformly held by the courts of this state. I regard it as perfectly certain, if Bagley and Mullen, with the deeds and title in the condition in which the complainant left them, were now asserting a right to these lands in a court of law by action of ejectment, or were in this court seeking to nullify a subsequent deed made by the complainant for the same lands, they would be dismissed as vexatious suitors, asserting a barren claim, without support in justice or law.

There is no word, act or fact in the case, showing an intention on the part of the complainant to transfer the title or to deliver the deeds, except the fact that he signed and acknowledged them, delivered them to his wife, with the charge to be careful of them, and then went away.

Unless signing and acknowledging a deed, when it is intended to be voluntary, be esteemed full and complete execution, so as to vest the grantee with title at once, no title passed by these deeds. I never so understood the law.

I shall advise a decree that no title passed by the deeds to Bagley and Mullen, for want of delivery, and that the deed from them to Mrs. Cannon is a nullity.

For obvious reasons, the complainant must take the decree, without costs, against the defendants.