WILLIAMS *et al.*, *Appellants*, v. LATHAM *et al.*

### Division One, December 22, 1892.

Deed: DELIVERY: RELATION. A grantor made a conveyance of land, reserving the possession and rents for her life, and, the grantees being absent, gave the deed for the grantees unconditionally to a third person, who did not record it, but retained it until after the grantor's death, when she delivered it to the grantees and it was recorded, it

being understood that this was the grantor's wish and intention. *Held*, that the delivery of the deed to the third person was absolute, and, the contingency upon which the second delivery was to take place being certain, she held the deeds as trustee for the grantees' benefit, and the second delivery related back to the first and was a good delivery in the lifetime of the grantor,

*Appeal from Jackson Circuit Court.*—Hon. John W. Henry, Judge.

Affirmed.

*Peak, Yeager & Ball* for appellants.

(1) A devise or disposition of property to take effect after death, whether that property be real, personal or mixed, must be made in conformity to the statute of wills, in order to be effectual. (2) A gift will be void as an attempted testamentary disposition, unless the title and control of the thing given not only passes from the donor, but becomes vested in the donee prior to the donor's death. *Walter v. Ford*, 74 Mo. 195; *McCord v. McCord*, 77 Mo. 166. (3) If the donee does not during the donor's life acquire the title and *jus disponendi* of the property, he cannot acquire it after the death of the donor, except by will or descent at law. *Basket v. Hassell*, 107 U. S. 602. (4) It was the intention of the grantor in this deed to make a disposition of said property to take effect after her death, and the deed is void. *Standiford v. Standiford*, 97 Mo. 231; *Sneathen v. Sneathen*, 104 Mo. 201; *Brown v. Brown*, 66 Me. 316. (5) This deed was in fact under the dominion and control of the grantor as long as she lived, and could have been recalled by her from the hands of her daughter at any time. It is, therefore, void. *Huey v. Huey*, 65 Mo. 689; *Cook v. Brown*, 34 N. H. 460. (6) There being no agreement or undertaking with defendant grantee on the part of Mrs.

Thompson to hold this deed for her, the depositary of the deed never became in any sense a trustee for defendant, but remained the grantor's agent; the agency was revoked by death, and the subsequent delivery to defendant was void. *Ridge v. Olmstead*, 73 Mo. 578; *Baker v. Haskell*, 47 N. H. 479. (7) There was no acceptance of this deed on the part of the grantee during the grantor's life, and under the restrictions imposed could not have been. The grantee not being a minor there is no presumption of acceptance, notwithstanding the beneficial character of the instrument. This essential to the deed's validity is wanting. *Welch v. Sackett*, 12 Wis. 270; *Woodbury v. Fisher*, 20 Ind. 380. (8) It being admitted by the answer that the receipt and acceptance of the deed by the grantee during the grantor's life was forbidden by the instructions to the depositary, the title to the property must have remained vested in the grantor as long as she lived, as in the case of an escrow. This title could not afterwards pass to defendant except by will. *Jackson v. Leek*, 12 Wend. 107; *Jackson v. Phipps*, 12 Johns. 421; *Weisinger v. Cook*, 7 South. Rep. (Miss.) 495. (9) Even an absolute delivery to a third person for the grantee is inoperative, and no title passes until knowledge and acceptance by the grantee. 5 American and English Encyclopedia of Law, 449, note 1.

*R. S. Rodgers* and *Albert Young* for respondents.

Where a deed is left with a third person with instructions to hold it until the grantor's death and then to deliver it to the grantee, it is well settled doctrine that, "if there is no reservation by the grantor of the privilege of recalling the deed before his death, but if he delivers it to the depositary with an absolute and final determination that it shall take effect when

the contingency of his death happens, it will become operative upon its delivery after his death to the grantee, and such delivery will relate back to the prior delivery, for the purpose of passing the grantor's title." *Scott v. Scott*, 95 Mo. 300; *Standiford v. Standiford*, 97 Mo. 231; *Crowder v. Searcy*, 103 Mo. 97; *Sneathen v. Sneathen*, 104 Mo. 201; *Allen v. DeGroodt*, 105 Mo. 442; Tiedeman on Real Property, sec. 815; 3 Washburn on Real Property [4 Ed.] pp. 288-301; *Younge v. Guilbert*, 3 Wall. (U. S.) 636; *Wheelright v. Wheelright*, 2 Mass. 454; *Hatch v. Hatch*, 9 Mass. 307; *Foster v. Mansfield*, 3 Met. 412; *Mather v. Corliss*, 103 Mass. 568; *Hathaway v. Payne*, 34 N. Y. 92-106; *Stephens v. Rinehart*, Pa. St. 434: *Stone v. Duvall*, 77 Ill. 475; *Wallace v. Harris*, 32 Mich. 380; *Hatches v. St. Andrew's Church*, 37 Mich. 264; Leading English Case, *Doe En Dem Garmons v. Knight*, 5 Barn. & Cress. 689.

BRACE J.—The plaintiffs, who are heirs at law of Sarah A. Smith deceased, bring this suit to set aside a deed executed and acknowledged by the said Sarah A. on the fourteenth of December, 1888, and recorded on the twentieth of May, 1889, conveying that part of lots 39 and 40 in Smart's Third Addition to the City of Kansas, situated at the northeast corner of Tenth and Cherry streets, contained within the metes and bounds set out in the petition, to the defendant, Lizzie Latham, on the ground that the said deed was never delivered in the lifetime of the said Sarah A. The finding and judgment below was for the defendants, and the plaintiffs appeal.

It appears from the evidence that Mrs. Smith was the owner in her own right of several lots in Kansas City on which there was a block of dwelling houses; that she resided with her husband and stepdaughter, Mrs. Thompson, at Topeka, Kansas; that she died

May 17, 1889, leaving surviving her her sister, the defendant, Nancy Holden, who since the institution of this suit has also died, ·and the plaintiffs, Elizabeth C. Williams, Laura E. Teller and Emma F. Burns, children of a deceased sister, her only heirs at law; that her sister, Mrs. Holden, living at Kansas City had four daughters to whom their aunt, Mrs. Smith, was very much attached, one of whom is the defendant Lizzie Latham; that Mrs. Smith was a clear minded woman, though an invalid, and for some years previous to her death intended to give this Kansas City property to the children of her stepdaughter, Mrs. Thompson, and her four neices, the daughters of Mrs. Holden; and at one time had a will prepared or partly prepared to effect such purpose. She changed her mind, however, and determined to effect that purpose by executing deeds to them, after consultation with her husband and friends, and being advised by her lawyer that it could be so done. Accordingly five deeds were drawn conveying the specific property she intended for each of her said nieces, and the children of her said stepdaughter, by a separate deed to them, the deed in question to Lizzie Latham, "reserving the possession and rents of said property to the grantor during her life," being one of them. The deeds were signed and acknowledged and delivered to Mrs. Thompson (the defendant, Lizzie, and her sister being absent at the time), and by Mrs. Thompson kept among her own papers until after the death of Mrs. Smith, when they were delivered to the grantees and recorded.

The only witnesses examined as to the delivery were Mrs. Thompson and Mr. Smith, for the plaintiffs, and Dr. Jones and Mr. Burgen, for the defendants. There is no conflict in their evidence. Upon the question of delivery Judge Burgen, who drew the deeds at her request, testifies as follows:

"*Q.* Will you state what she told you she wanted to do? *A.* She told me she wanted to make conveyances of property in Kansas · City to four persons, naming them, and two others, the children of Mrs. Ida Thompson.

"*Q.* How did she say she wanted it done, and how did you advise her with reference to it? *A.* She asked me whether good and valid deeds could be made when they were not present. My reply to her was substantially that the delivery of a deed was essential to its validity, but that if the parties were not present I supposed it would be valid if delivered to someone else for them.

"*Q.* To carry out that intention what did you advise her, and what did she do? *A.* I prepared some conveyances as she requested, and as to some of the details, as informed by a written memorandum given me at my office, which was very near to her husband's place of business, by him. I prepared the deeds and went over to her residence to receive the acknowledgments. I was a notary public at the time at which the acknowledgments were certified. The deeds were all carefully read over to her, every word that was in every one of them, except the formal parts of all except one, and that was read to her in full. I mean the printed part; only one was read. She looked at every one and saw that they were identical in printed form. She signed and acknowledged the execution of the deeds to me as a notary public, and she said she would deliver them to Mrs. Thompson. I think she said 'Ida,' meaning and referring to Mrs. Ida Thompson, who sat near her. At the time of the delivery I had each one of the deeds in my hand. After it had been signed and acknowledged, and reading the name of the grantee in each one, I asked her if she delivered that

deed to Mrs. Thompson for the grantee, naming the grantee. The grantees were Ida Holden, Sallie Merritt, Nannie B. Beatty, and Lizzie Latham, and the children of Mrs. Thompson, five deeds, one to each of the four first named separately, and the other, I believe, jointly to the children, two children of Mrs. Thompson. As I would ask her each of those questions, she would say 'I do' or 'Yes,' and the deed was then placed immediately in front of Mrs. Smith, and, either by her personally or by some motion to Mrs. Thompson, passed into Mrs. Thompson's hands.

"*Q.* Now, what was said by Mrs. Smith and also by you to Mrs. Smith as to how Mrs. Thompson should keep these deeds, in order to legally effect this disposition of this property which she desired? *A.* I had, before the execution, told Mrs. Smith that possession and custody and control of the deeds, in order to avoid any controversy, would have to go then from her at that time. After the deeds were delivered to Mrs. Thompson, Mrs. Thompson put them together and made some motion as if to rise and move away, saying at the time that she would put them in her or 'your,' using some word which I don't remember, but which, as I understood from it, was a place used by both Mrs. Smith and Mrs. Thompson, and under their joint control and possession; and I remarked at the time substantially to both of them that, having made delivery of the deeds to Mrs. Thompson for the grantees named, they had passed out of Mrs. Smith's custody and possession and control, and, if it was her desire that they should be effectual, that it would probably be better that Mrs. Thompson should not put them in any place of which Mrs. Smith had possession or control, but in some separate place. Mrs. Smith said yes, they were in Ida's possession and for her to

take care of them and put them where she deemed best. I do not remember the precise words. She might have said 'where she please.'

"Q. Do you know where she did put them? A. No; I do not.

"Q. To all of this advice that you gave her as to what were the legal necessities, I understand you to say that she assented, and said it was all right? A. She said yes, she wanted it done so as to make it certainly valid and effectual, and wanted it done as I suggested it was better to do it. I was there probably an hour. There was considerable talk. I do not pretend to have given everything that was said about every matter, but I think this is the substance of what was said relative to the disposition of the deeds.

"Q. This was at her home was it? A. Yes; at her home.

"Q. Mrs. Smith was a practical woman, wasn't she? A. I think so. She was quite bright at that time.

"Q. That is, I mean by that, she was a woman who understood business affairs? A. She seemed to understand exactly what she wanted."

On cross-examination Judge Burgen testified further:

"Q. Was there anything said there at the time these deeds were given to Mrs. Thompson about the time she was to deliver them to the grantees? A. My recollection is that nothing was said as to the time when the deeds should be delivered to the respective grantees, except that Mrs. Smith remarked that she wanted to make a division of her Kansas City property among those named, and wanted it valid and sure, and felt assured that she would not live long, and might die any hour. Immediately Mrs. Thompson, and

perhaps others, remarked that they hoped not; that, from the way she was feeling then, she might live and enjoy life longer than any of us.   Mrs. Smith said she was convinced that that was impossible, and it was stated there that if the deeds were not handed to the grantees before her death they should be handed to them immediately after her death.

"*Q.* When you were advising her then as to how this property might be effectually deeded to those respective grantees, you were not contemplating that Mrs. Thompson should be forbidden to deliver them to the grantees during her lifetime, were you?   *A.* I was not aware that there was any prohibition of the delivery of the deeds to the grantees during the lifetime of Mrs. Smith.

"*Q.* You understood the only thing was, that these parties were not here, and your advice was as to how the property could be deeded to them in their absence?   *A.* That was the substance of my advice.

"*Q.* You did not understand that there was any restriction or prohibition on Mrs. Thompson by which she would not be allowed to deliver those deeds to the grantees while Mrs. Smith lived?   *A.* I did not; further than this, that my impression was that probably Mrs. Thompson would not deliver them while Mrs. Smith lived."

The foregoing extracts give a fair idea of the character of the delivery as it appears from the whole of the evidence.   The evidence of the other witnesses in no way changes its complexion.   It seems to have been Mrs. Thompson's understanding that Mrs. Smith did not want them recorded until after her death, and that she was to keep them until after her death, and then deliver them to the grantees, which

she did. But it does not appear that Mrs. Smith herself attached to the delivery to Mrs. Thompson any condition as to the time of delivery to the grantees, or in fact any condition. For ought that appears, if Mrs. Thompson had delivered the deeds to the grantees the next day after the delivery to her, she would have violated no injunction of her stepmother. But, conceding that it was the intention of Mrs. Smith that the deeds were not to be delivered by Mrs. Thompson or recorded until after her death, and that Mrs. Thompson was cognizant of that intention, yet the delivery was good. It was absolute; the contingency upon which the second delivery was to take place was certain to happen, all the power and dominion of the grantor over the instrument was relinquished without reservation to Mrs. Thompson. The intention to pass title as a present transfer is evident upon the face of the whole transaction and placed beyond doubt by the grantor's reservation of the possession and rents for her life, put in the deeds after they were drawn, on her own suggestion. Such being the case, from the moment the deed was delivered to Mrs. Thompson she became a trustee, holding the instrument for the benefit of the grantee, and, when she discharged the trust, by afterwards delivering the deed to the defendant (although after the death of Mrs. Smith), yet such second delivery hath relation to the time of the first, and is a good delivery in the lifetime of Mrs. Smith.

The ruling of the circuit court so holding is sustained by the rulings of this court in the following cases and the authorities cited: *Rothenbarger v. Rothenbarger*, 111 Mo. 1; *Allen v. DeGroodt*, 105 Mo. 442; *Sneathen v. Sneathen*, 104 Mo. 201; *Crowder v.*

*Searcy*, 103 Mo. 97; *Standiford v. Standiford*, 97 Mo. 231; *Burke v. Adams*, 80 Mo. 504; *Huey v. Huey*, 65 Mo. 689.

The judgment of the circuit court is affirmed. All concur.