LIEUREN A MENDENHALL and JENNIE M. CHAMBERLAIN v. SALEM PEARCE and LETTIE PEARCE, Appellants.—20 S. W. (2d) 670.

Division One, September 13, 1929.

966

*Cook & Cummins* for appellants.

*A. F. Harvey* and *Shinabargar, Blagg & Livengood* for respondents.

LINDSAY, C.—This is a suit to determine title to eighty acres of land in Nodaway County, as between the respondents, plaintiffs, and the defendants, appellants herein. The parties to both sides of the controversy claim title under Laura Pearce, deceased, who was a sister of the two plaintiffs, and of defendant Salem Pearce. Lettie Pearce is the wife of Salem Pearce. Plaintiffs claim title under the residuary clause of the will of Laura Pearce, and Salem Pearce claims title under a deed executed by Laura Pearce to him several years before her death or the execution of said will, which

said deed was deposited by Laura Pearce with the Barnard State Bank of Barnard, Missouri, under a written instruction that said deed should be retained by the bank in its possession until the death of Laura Pearce, and upon her death be delivered to the grantee.

The petition is in conventional form, alleging that Salem Pearce claimed title to the said eighty acres of land, and that Lettie Pearce claimed an interest therein by virtue of her marital rights, and asked that the rights of the parties be determined and adjudged, and a decree be made barring the defendants from claiming or setting up title or claim to said real estate. The answer claimed title in defendants and asked determination of title in their favor.

The evidence was that Laura Pearce became the owner of the eighty acres in controversy about the year 1914, by a deed from her father Peter Pearce, now deceased, and that each of her two sisters, the plaintiffs herein, who were then single women, became the owner of eighty acres of land by deed from Peter Pearce. The three sisters also in the same way became the owners of certain real estate in the town of Barnard, which was held by them as tenants in common. The three sisters from the time they became the owners of said properties, had a common bank account and rented the lands given them by their father, using the proceeds for their common benefit up until a time two or three years before the death of Laura Pearce. The two sisters of Laura Pearce, Lieurena and Jennie M. Pearce, were married two or three years prior to the death of Laura Pearce.

The deed under which defendant Salem Pearce claims title to the eighty acres in controversy was a warranty deed in common form with covenants of warranty dated the 28th day of March, 1916, and executed by Laura Pearce to Salem Pearce, as grantee, for the recited consideration of the sum of one dollar and love and affection. The deed was acknowledged on the 13th day of July, 1916. On the last-named date Laura Pearce also executed a warranty deed conveying the real estate in the town of Barnard to her two sisters, Lieurena Pearce and Jennie M. Pearce, the plaintiffs herein. These deeds were drawn by John A. Fields, the cashier of the Barnard State Bank, who, as notary, took the acknowledgment of Laura Pearce to said deeds. On that date, July 13, 1916, Laura Pearce also signed and delivered the following certificate of instruction in writing concerning the execution, purpose and delivery of said deeds.

"Barnard, Mo. July 13, 1916.

"This certifies that I have this day executed and placed for safe keeping in the Barnard State Bank of Barnard, Mo., two warranty deeds one dated March 28th, 1916, to Salem Pearce, the other dated this day to Jennie and Lieurena Pearce and it is my wish, and I hereby authorize and instruct the said Barnard State Bank, to retain

possession of said deeds until my death, and when this occurs to deliver said deeds to the parties therein named.

"In witness whereof I have hereunto set my hand the day and year first above written.

HER

"LAURA. x PEARCE

MARK

"Witnesses

JENNIE PEARCE

MRS. T. A. HUMBRED

JOHN A. FIELDS."

The two warranty deeds mentioned in said certificate, with the certificate, were deposited with the Barnard State Bank at the time, and there remained until some three or four weeks after the death of Laura Pearce, which occurred on the 4th day of January. 1925. The warranty deed to Salem Pearce was then delivered to him. The deed to the plaintiffs to the property in the town of Barnard was not delivered. They did not accept the deed, but claimed under the will.

On the 7th day of June, 1923, Laura Pearce executed her last will and testament, which after her death was duly admitted to probate. By the second clause of said will, she gave all of her personal property to her sister, the plaintiff Lieurena P. Mendenhall. By the third clause of the will she gave to her said sister, Lieurena P. Mendenhall, all of her right, title and interest in the real estate situated in Barnard. By the fourth clause of her will she gave all the rest, residue and remainder of her property to her sisters, Jennie M. P. Chamberlain and Lieurena P. Mendenhall, share and share alike, and for their separate use, and clear of any statutory or common-law rights of their present husbands or any husbands either of them might thereafter have.

The court found the issues in favor of the plaintiffs, making the finding in the decree that Laura Pearce, at the time the deed to Salem Pearce was placed in the custody of the Barnard State Bank with written directions, did not intend at that time to part with the title to said lands and pass the title to defendant Salem Pearce; that there was no delivery of said deed during the life of Laura Pearce; that there was no consideration for said deed; and on account thereof, said deed was insufficient to pass to or vest in defendant Salem Pearce, any title or interest in said land, and that the plaintiffs were vested with the absolute title thereto as sole owners, under the will of Laura Pearce. The sole question in the case is whether, under the written instructions given and the other circumstances shown, there was a delivery of the deed of Laura Pearce to Salem Pearce,

which operated to pass the title as of the date when said deed was deposited with the Barnard State Bank.

The action is a straight action brought in the terms of the statute, and neither under the pleadings nor the evidence is there presented any issue of equitable cognizance. It is therefore an action at law. [Koehler . v. Rowland, 275 Mo. 573; Minor v. Burton, 228 Mo. 558; Lee v. Conran, 213 Mo. 404; Jacobs v. Waldron, 317 Mo. 1133.]

The cause was submitted to the court and no declarations of law were asked or given. There is no error assigned on appeal in the admission or rejection of testimony. Indeed the brief contains no assignments of errors, except as developed under the head of "points and authorities." The points stated and the authorities cited go to the questions whether, under the evidence, there was an unconditional delivery of the deed, an intention on the part of the grantor to part with dominion over the deed to the land in suit. We shall treat the brief in the respect mentioned as raising the question whether there was error in the finding of the trial court, that the deed was testamentary in character, that there was no intention on the part of Laura Pearce at the time, to pass title to defendant, nor delivery of the deed during her lifetime, within the meaning of the law, so as to make the same operative. Being an action at law, submitted to the court without declarations of law asked or given, the question is whether the finding of the trial court is supported by substantial evidence. The determination of the actual issue turns upon the intention of Laura Pearce, on July 13, 1916, when the deeds were acknowledged and deposited with the Barnard State Bank. There is no dispute here as to the execution of the deeds, or their manual delivery to the Barnard State Bank, nor serious dispute as to the execution or signing by Laura Pearce of the instructions heretofore set out. There was no delivery within the meaning of the law, operating to pass title, unless the grantor, at the time, intended to divest herself of title and of control over the deed, and delivered it without right of recall. If such was her intention, then, the delivery was complete; otherwise it was not. Such is the rule announced by all the authorities, and the citations apply to cases wherein the delivery was made to a third party. [18 C. J. 203, 204; 8 R. C. L. 995-997; Crites v. Crites, 225 S. W. 990; Peterman v. Crowley, 226 S. W. 944; Meredith v. Meredith, 287 Mo. 250; Tillman v. Carthage, 297 Mo. 74; VanHuff v. Wagner, 315 Mo. 917.] In cases such as the case at bar ascertainment of the intention of the grantor is the essential thing.

It is necessary to go somewhat farther in the statement of what the testimony tended to show. It is shown that Laura Pearce remained in full control of the land in controversy until her death. About one year and a half before her death, the dwelling house on the prop-

erty burned, and she collected $600 insurance thereon and borrowed $1,000 securing the payment of the same by mortgage on the land; and out of the money so obtained, she rebuilt the dwelling house. Mr. Fields testified that he did not inform Salem Pearce of the making of the deeds. George W. Cole was cashier of the bank at the time Laura Pearce died. He gave the parties notice of the papers held by the bank. His testimony suggests, but does not make it clear, that Salem Pearce already knew of the making of the deeds.

There is no evidence that Laura Pearce, at any time, sought a return of the deeds delivered to the Barnard Bank. Mr. Fields, the cashier of the bank, who prepared the deeds and certificate, testified that sometime prior to March 28, 1916, Laura Pearce told him of what she wanted to do, and asked him to prepare the papers. His testimony was that he was busy at the time, and did not immediately prepare them, but finally did so, and took them to the home of Laura Pearce. His testimony is to the effect that she could not sign her name legibly; that she attempted to sign it, and he did not regard it as legible, or a sufficient signature to the deeds and the certificate, and he wrote her name, she placing her mark upon the papers, and he and two other persons signed as witnesses to the execution of the deeds and the written instructions. The two persons signing these instruments as witnesses, in addition to Mr. Fields, were plaintiff Jennie M. Chamberlain, then Jennie M. Pearce, and a Mrs. Humbred, a lady living near the residence of Laura Pearce, and called in for that purpose. Mrs. Humbred, in her testimony, said that upon the occasion when these instruments were signed, she heard Laura Pearce say nothing of the purpose of the instruments, but that if she remembered right, Mr. Fields said in effect that the purpose was that if anything should happen to Miss Laura, if she should die while she was away, everything would go to her sisters, Miss Lieurena and Miss Jennie; that she understood that Laura Pearce was not in good health and was about to go to Colorado for a short time on that account.

The plaintiff Jennie M. Chamberlain also testified concerning what was said and done at the time she signed the papers mentioned, as a witness. She testified on her direct examination:

"Did you know what you were witnessing at the time? A. I did not. I did not know what I was signing my name to. He never said what it was, nor one thing, only it was a little article to answer while Laura was gone west, and he says, 'Miss Laura is in poor health and she requested me to make these, and it is only a little temporary thing to last while she is west for fear there might be something happen to her,' and she wanted Rena and I to have what she had, her property.

"Q. And that is all you knew of the instruments you were witnessing? A. Yes, it was, and I didn't know what I was signing."

On cross-examination she testified:

"Q. Just one thought, Mrs. Chamberlain, you understood that you were witnessing the signature of your sister to some papers? A. Yes, sir, I knew it was something, but I didn't know what it was.

"Q. And you saw your sister making her mark on it? A. No, sir, I didn't see her sign the paper at all; she never arose from her chair.

"Q. Well, why did you sign something reciting that you did see her? A. Mr. Fields had her to sign it.

"Q. Well, I say you saw her sign it? A. I didn't see her sign it.

"Q. Well, why did you sign anything then that recites that she did? A. Well, will you give me the privilege of asking why he came in the house and didn't tell us?

"Q. No, I am just asking you why you signed the paper that you didn't know? A. I positively didn't want to sign it, and they wanted me to sign.

"Q. Who requested you to sign it? A. Laura wanted me to sign it; she says, 'Jennie, it absolutely means nothing only while I am west that if I die you girls have what I have.'

"Q. She told you it was something prepared there that if she died you girls would get the property? A. Yes, sir."

The witness Fields was called in rebuttal of the testimony of plaintiff Jennie M. Chamberlain and of Mrs. Humbred, that he stated at the time the papers were signed and witnessed, the deeds being so made were only of a temporary character. He testified that no such conversation occurred. It may be added in connection with the statement of the character of the testimony of Mrs. Humbred that she professed to have only a "faint idea" of what was said, her statement in one place being: "It just seemed that he mentioned that it would be only a temporary affair, only the length of time she would be gone, is the way it happened, is the way I understood it."

The plaintiff Mrs. Lieurena Mendenhall testified to some conversation which she said she heard between her brother Salem Pearce, and her sister Laura Pearce, and which, as she testified, occurred about two years before the trial. Her testimony was to the effect that two years before, when Salem Pearce appears to have been staying in Barnard for a time, during the winter, she heard her sister Laura say to Salem and to Salem's wife that she (Laura) "didn't expect him to have a cent she had."

A Mrs. Akrom, who lived next door to Laura Pearce, testified that several times she heard Laura Pearce speak of her property, and say that she "wanted her property to go to the girls; that her father fixed it that way, and gave them their deeds, and it was supposed to be

kept amongst them.'' This witness fixed the time of these statements on the part of Laura Pearce as ''within the last two years.''

L. W. Mendenhall, husband of plaintiff Lieurena Mendenhall, also testified, that he heard a conversation—''a little argument''—between Laura Pearce and her brother Salem Pearce about Laura giving money to the church, in which ''just one thing led to another, and Laura got out of fix and told him that he needn't think he could stay around there all winter, and that he had went out west and spent everything he had, and that he needn't think he could stay around there all winter, and get what she had, because she never expected him to have a cent of it.''

Salem Pearce was a non-resident of Missouri at the time of the suit, and as the testimony shows, was living in Colorado at the time the deeds were made and thereafter, except as far as appears from the testimony to the effect that, one winter, he was staying at Barnard in Nodaway County.

L. W. Mendenhall, husband of Lieurena, asked if Salem Pearce ever put any repairs on the eighty-acre tract in controversy, said that in the winter two years before (the trial) he, the witness, was building a new hen house and Salem Pearce came and helped him work on it one day.

In cases of this character involving the question of intention, at a given time, in respect to the delivery of a deed, it has been said that there will be considered what was said and done at and before the time, and sometimes, what was said and done afterward. Thus, in Cook v. Newby, 213 Mo. 489, it was said:

''A deed speaks only by delivery, and what constitutes delivery is frequently a close question. It is a question of intent—a mixed question of law and fact. The intent of the parties may be got at by what happened before and at the time and, it has been said, it may be that what happens afterwards is of value.''

The foregoing excerpt was quoted with approval in Crites v. Crites, 225 S. W. l. c. 992, a case involving the question of delivery of a deed to a third person. See also Saltzseider v. Saltzseider, 114 N. E. (N. Y. Court of Appeals) l. c. 859. In this case, and as to what happened afterward, it was shown that the grantor remained in possession and control of the land in controversy during her lifetime; also, there is the testimony heretofore referred to, that in the period of two years next before the trial or, within about that period before the death of Laura Pearce, she made statements to the effect that she did not intend that Salem Pearce should get any of the property she had. These statements were made at a time, six or seven years, after the execution and deposit of the deeds, and while they remained, as they continued to remain, in the custody of the bank without any effort to recall them.

The other subsequent act to which reference may be made, is the execution of the will, and its terms heretofore mentioned, whereby, the testatrix gave all of her personal property to her sister, the plaintiff Lieurena Mendenhall, and by the third clause gave to Lieurena Mendenhall all of the title and interest of the testatrix in the real estate—the home place—situated in the town of Barnard. As to this clause it is to be observed, that the description of the property devised is by metes and bounds, and reference to lot and block numbers in the town of Barnard. This was the property included in the deed made in 1916, in favor of both the sisters, and deposited with the bank. The fourth clause of the will, as heretofore stated, was the residuary clause, a devise to the two sisters, which made no reference to what property was included therein.

The attorney who drew the will of Laura Pearce was called as a witness, and testified that when she came to him to prepare the will, she had deeds and papers with her, and had a deed containing the description of the property situated in the town of Barnard; that she had also other papers, which he did not see, but, that she told him she wanted to leave the eighty acres to her sisters, and inquired if it was necessary to give a particular description of that property, and he advised her that it was not necessary.

As we view this case its proper determination upon appeal must be largely controlled by the terms of the written instructions given at the time the deeds were delivered to the Barnard State Bank. The written instructions were the only instructions given. The grantor did not commit expression of her intention to the uncertain recollection of witnesses, hearers of an oral statement, but she gave expression of her intention by her written instrument, which, by relation and reference to the deeds, partook of the solemn nature of the deeds themselves; and, she did not commit the custody of the deeds and the instructions to an individual, but to the bank. There is no evidence whatever that any instruction was given by Laura Pearce concerning the deeds, except this writing. Mrs. Humbred, vaguely, and Mrs. Chamberlain more positively, testified to a statement made by Fields, the scrivener, at or immediately after the time they signed these instruments as witnesses, that it was a temporary matter. But, Mrs. Humbred testified that she did not remember hearing Laura Pearce herself say anything on that occasion. Mrs. Chamberlain testified it was Laura Pearce herself, who asked her to sign as a witness, and that Laura said: "Jennie it absolutely means nothing only while I am west that if I die you girls have what I have." Fields denied positively that anything was then said by him as to the temporary character and purpose of the transaction, and neither Mrs. Humbred nor Mrs. Chamberlain testified that Laura Pearce made any reply to the oral statement attributed by them to

Fields. The question becomes one of construction of the writing, because we cannot regard as material, or as evidence of a substantial character, the testimony of Mrs. Humbred and Mrs. Chamberlain to an oral statement by Fields contrary in effect to the terms of the written instruments, or the testimony of Mrs. Chamberlain as to what Laura Pearce said, also contrary to the written instruments. The testimony was given more than nine years after the instruments were signed. There was no charge nor attempt to prove that Laura Pearce could not read, or that she did not understand what she was signing, or that she was induced to execute these instruments believing they were different from what they actually were. Under the circumstances the construction of this writing becomes a question of law. In 8 Ruling Case Law, page 997, Section 61, dealing with the very subject at hand, and as to the directions given, it was said that "when the only instructions are in writing the effect of the transaction depends on the construction of the writing and becomes a pure question of law, upon which anything said by the grantor to third persons expressive of his intentions and wishes is immaterial."

Taking up the terms of the writing, the first expression is that the deeds were deposited with the bank for safe-keeping, followed by the statement that "it is my wish, and I hereby authorize and instruct the said Barnard State Bank to retain possession of said deeds until my death." Clearly, by the terms used the grantor intended it to be understood that it was her purpose to retain the possession and enjoyment of the property during her lifetime. To that end, she wished, authorized and instructed the bank to retain possession of the deeds until her death. She meant that the bank was to retain possession of the deed to Salem Pearce, as against him, during her lifetime, and also retain possession as against herself during her lifetime, so as to effectuate the wish, authority and instruction that when her death occurred, the deed should be delivered to the grantee therein. By this instruction Laura Pearce did not constitute the bank an agent, merely, for the safe-keeping of the deed for her own benefit; but, in authorizing and instructing the bank to retain possession of the deed until her death, and then to deliver it to the grantee named therein, she constituted the bank a trustee as respects the deed for the grantee named.

The case at bar, in certain essential respects, is much like the case of Meredith v. Meredith, 287 Mo. 250. In that case the grantee in the deed, delivered to a bank, was the wife of the grantor. The grantor deposited the deed with written instructions that the deed was "to be held in trust and for safe-keeping until my death, then said bank is to deliver said deed" to the wife of the grantor. In the opinion it is said that the grantor, after such deposit, never had

the deed in his possession, nor attempted to secure possession of it, nor made any inquiries concerning it after he delivered it to the cashier. There was, however, in that case some oral testimony to the effect that the grantor, after the deed was deposited with the bank, made some statements or declarations that he had deeded everything he had to his wife, and at his death he wanted her to have it. The written instructions in this case do not, in set terms, declare that the deed was to be held in trust. It is not essential, however, to the creation of a trust that the specific word "trust" should be used. In the instant case the deed to Salem Pearce is absolute on its face. No life estate in the grantor is reserved. The bank is instructed and authorized to retain possession of it until the death of the grantor. The holding by the bank until that event, certain to occur, was for the benefit of the grantor as retaining the use and benefit of the land during her lifetime, and it was equally for the benefit of the grantee upon the occurrence of the grantor's death, when its delivery was directed to be made to the grantee. Under our view the bank, in accepting the deed under the written conditions which accompanied it, became not an agent, but a trustee of an express trust, and as such was charged with the performance of a defined duty to the grantor, and a defined duty to the grantee. There is an extensive review of the cases in the annotation to be seen in 52 American Law Reports 1222.

In Meredith v. Meredith, 287 Mo. l. c. 225, it was said:

"A delivery to a third party to be held by him and delivered to the grantee upon the grantor's death will operate as a valid delivery when there is no reservation in the deed nor any right of control over the instrument retained by the grantor. The deed, by his own act, having passed beyond his control, accompanied by the declaration that it was delivered for the use and benefit of the grantee, has the same effect in the hands of the custodian as if it had been manually delivered by the grantor to the grantee. [Schooler v. Schooler, 258 Mo. 83; Terry v. Glover, 235 Mo. 544; Seibel v. Higham, supra; White v. Pollock, 117 Mo. 467; 18 C. J. p. 208, sec. 114; 2 Jones, Real Prop. (1896) p. 220; Cannon v. Cannon, 26 N. J. Eq. 316.]

"The deed at bar, unconditional in its terms and beyond the control of the grantor upon its delivery to the bank, although not conferring an immediate right of present possession, constituted such an investiture of title as to give the grantee a present fixed right of future enjoyment, although the use of the premises was retained by the grantor during his life. [O'Day v. Meadows, 194 Mo. 588; Headington v. Woodward, 214 S. W. 963.]

"The manual delivery of the deed to the grantee by the depositary upon the death of the grantor and its acceptance by the grantee, leaves no room for controversy concerning this fact. The time of

the acceptance will not affect the validity of the transfer. [Burkey v. Burkey, 175 S. W. 1. c. 624.] Acceptance after the death of the grantor dates back to the time of the delivery of the deed to the bank and renders it a transfer as of that date. [Williams v. Latham, 113 Mo. 165; Sneathen v. Sneathen, 104 Mo. 1. c. 209.]''

The foregoing is applicable to the facts and the situation of the parties, in the case at bar. Under the conclusions we have reached, the judgment is reversed and the cause remanded with directions to enter judgment for the defendants. *Seddon, C.*, concurs; *Ellison, C.*, not sitting, having been of counsel.

PER CURIAM:—The foregoing opinion by LINDSAY, C., is adopted as the opinion of the court. All of the judges concur.