OSBORN *et al.* v. WELDON *et al., Appellants.*    |146    185|
|171   ¹697|

Division Two, November 21, 1898.*

1. **Dower:** ADMEASUREMENT : LIMITATIONS. Where land is in the possession and occupancy of one who holds it by reason of his purchase of a widow's dower right therein, the statute of limitations does not begin to run in his favor as against the owner of the title, until dower is assigned or the death of the widow. Nor is the owner's action in ejectment for the recovery of the property barred until ten years after the widow's death, if the dower had never been assigned.

2. ———— : ———— : ————: DEED. But if the widow purchased the land at the administrator's sale thereof, and she made deed conveying the same to the defendants' ancestor, her warranty deed conveyed whatever interest she had in the land, and not a less estate, unless the deed itself shows her intention to convey a dower right only. And in that case the statute of limitations begins to run from the time the grantee took possession under the deed.

3. ———— : ————: EVIDENCE: BURNT RECORDS: ANCIENT DEED: PRESUMPTION. Osborn died in 1850, and one Martin became his administrator, and as such took charge of the land in suit. In 1852 the widow began suit in the circuit court for the admeasurement of dower, recovered judgment against the administrator and his tenant for one third of the land, the judgment reciting that as the widow "had become the purchaser since her husband's death of said real estate, no commissioners are required to assign and measure her dower." In 1855 she conveyed the land by warranty deed, duly acknowledged and recorded, to defendants'˙ancestor, and for the next forty years it was in the possession of him and his grantees successively. In 1886 the widow died, and nine years and four months thereafter this suit was brought by the husband's heirs, the youngest of whom become of age in 1866. In 1890 all the papers of the probate court were destroyed by fire, all the parties to the original transactions being dead at the time suit was brought. *Held*, that it will be presumed, under the circumstances, that the administrator executed and delivered to the widow a deed to the land in accordance with her purchase, and hence that her deed to her grantee conveyed the fee, and plaintiffs can not recover.

NOTE.—Decided July 6, 1898. Motion for rehearing denied November 21, 1898.

*Appeal from Daviess Circuit Court.*—HON. E. J. BROADDUS, Judge.

REVERSED.

*Alexander & Richardson* and *Gillihan & Brosius* for appellants.

(1) Mary Osborn and her grantees were estopped by proceeding to set off dower and for rent and by her general warranty deed to Benedict Weldon from claiming that she was in possession and conveyed her quarantine only. *Thistle v. Thistle,* 50 Mo. 299; 2 Smith's Lead. Cas. in Eq., pp. 756 and 717; 2 Scribner on Dower, sec. 22. (2) The legal assertion of right acquired by decree of court of competent jurisdiction, made by due course of law, will estop or bar the party making it, from all subsequent proceedings to invalidate the decree under which the asserted right has been claimed. *Bailey v. Bailey,* 44 Pa. St. 274. (3) When Benedict Weldon took possession under the warranty deed executed to him by Mary Osborn, he did so as owner and adversly to plaintiffs, and all others claiming the legal title. His possession and that of his grantees, and the acts of ownership exercised by them over the land, the making of lasting and valuable improvements, etc., were all inconsistent with the claim made by plaintiffs that they (Benedict Weldon and his grantees) only had or claimed Mary Osborn's quarantine and plaintiffs were bound to know it. They lived in the neighborhood all of that time. *Key v. Jennings,* 66 Mo. 356; *Gordon v. Lewis,* 88 Mo. 378; *Bush v. White,* 85 Mo. 339; *Hamilton v. Boggess,* 63 Mo. 233. (4) A general warranty deed from Mary Osborn was the color of title under which Benedict Weldon took possession of the land in controversy, and he and those claiming title through him have had open, and continuous adverse possession under claim of right or color

of title in fee, for more than forty years.  Ten would have been sufficient.  *Bradley v. West,* 60 Mo.33; *Wilkerson v. Eilers,* 114 Mo. 245; *Harper v. Morse,* 114 Mo. 317; *Comstock v. Eastwood,* 108 Mo. 41.  (5) Where an administrator makes sale of real estate to pay debts, and all requisite steps are taken, except that the administrator has failed to make a deed, the equitable title and right thus acquired as against the heirs is barred by an actual continuous, adverse possession for ten years.  *Sherwood v. Baker,* 105 Mo. 472. (6) Mary Osborn, having executed a conveyance of her husband's lands with covenants of warranty, also estopped herself from claiming dower against those claiming under such conveyance, and their possession was certainly hostile and adverse to any such claim.  2 Scribner on Dower, sec. 22; *McGee v. Mellon,* 23 Miss. 585.  (7) Judgment assigning dower, though clearly erroneous, is conclusive as an estoppel. *People v. Holliday,* 93 Cal. 241; *Case v. Beauregard,* 101 U. S. 668.

*W. D. Hamilton* and *Boyd Dudley* for respondents.

(1) The following cases are decisive of this case: *Melton v. Fitch,* 125 Mo. 281; *Fischer v. Seikmann,* 125 Mo. 165; *Carey v. West,* 139 Mo. 146; *Shumate v. Snyder,* 140 Mo. 77.  (2) The continuance of the widow and her grantees in possession without legal assignment and admeasurement of dower is not adverse to the remainderman; he can not bring his action to recover until her death, and the statute of limitations can not begin to run until he is legally entitled to bring suit for possession.  *Stokes v. McAllister,* 2 Mo. 163; *Cane v. McCowen,* 55 Mo. 181; *Jones v. Manly,* 58 Mo. 559; *Brown v. Moore,* 74 Mo. 633; *Sherwood v. Baker,* 105 Mo. 472; *Fischer v. Seikmann,* 125 Mo. 165; *Melton v. Fitch,* 125 Mo. 281; *Gentry v. Woodson,* 10 Mo. 224;

*Warren v. Williams*, 25 Mo. App. 22; *Null v. Howell*, 111 Mo. 273; *Colvin v. Hauenstein*, 110 Mo. 575; *Thomas v. Black*, 113 Mo. 66; *Orrick v. Robbins*, 34 Mo. 226; *Agan v. Shannon*, 103 Mo. 671. (3) And the defendant being in possession in the right of the widow's right in quarantine the holding was in privity with the plaintiffs. That fixed the character of their possession and nothing they could do or say would so change the character of their possession as to make it adverse to the plaintiffs. *Keith v. Keith*, 80 Mo. 125; *Salmon v. Davis*, 29 Mo. 176; *Melton v. Fitch*, 125 Mo. 282; *Hickman v. Link*, 97 Mo. 482; *Fischer v. Seikmann*, 125 Mo. 177. (4) It is true that they might at any time after they became of age have terminated their mother's right to exclusive possession in quarantine by having her dower assigned, but they were under no obligations to do so and can not be charged with laches in not hav-ing done so. *Jones v. Manley*, 58 Mo. 559; *Brown v. Moore*, 74 Mo. 633; *Sherwood v. Baker*, 105 Mo. 472; *Fischer v. Seikmann*, 125 Mo. 165. (5) Where there is no evidence that sale was approved, and purchase money paid, no title passes, either legal or equitable. *Sherwood v. Baker*, 105 Mo. 472; *Hughes v. McDivitt*, 102 Mo. 77; *Price v. Springfield Co.*, 101 Mo. 107; *Long v. Joplin Co.*, 68 Mo. 423; *Grayson v. Weddle*, 63 Mo. 525; *Bone v. Terrell*, 113 Mo. 175. (6) There being no deed shown, before it can be presumed, there must be positive proof of payment of purchase price, and approval of sale by the court. *Henry v. McKerlie*, 78 Mo. 428; *Long v. Joplin Co.*, 68 Mo. 423.

BURGESS, J.—This is an action of ejectment for the possession of a tract of land in Daviess county, Missouri. Both parties claim title under Joseph Osborn, deceased, the plaintiffs as his only heirs at law, and the

defendants by mesne conveyances. Defendants also rely upon the statute of limitations.

The case was tried to the court, a jury being waived.

The issues were found for plaintiffs as against defendant James H. Weldon, and for the other defendants, and judgment rendered accordingly.

Defendant James H. Weldon appealed.

Joseph Osborn died in June, 1850, the owner in fee of the land involved in this litigation, upon which his wife Mary Osborn and children, the plaintiffs, then resided. Sometime between the month of June and the twenty-fifth day of December of that year, Mrs. Osborn rented the land and moved elsewhere. One Manual Martin was appointed administrator of Joseph Osborn, deceased, on the second day of December, 1850.

On the second day of September, 1852, Mrs. Osborn filed her petition in the circuit court of said county against Manual Martin, the administrator of the estate of her deceased husband, and John W. Blakely, his tenant in possession of the land, for the admeasurement of her dower therein and for damages in the way of rents, etc. At the October term, 1852, of said circuit court judgment was rendered in her favor against the administrator and his tenant, in which was adjudged to her as her dower one third interest in said land for and during her natural life, and $8 damages, that being her third of the rents and profits. The amount of the judgment was afterwards paid to her by the administrator.

There was evidence tending to show that before this final judgment the land had been sold by the administrator for the payment of debts against the estate and that Mrs. Osborn had become the purchaser of it at such sale, and therefore no commissioners were

appointed by the court to admeasure her dower interest, the judgment reciting that as Mrs. Osborn "had become the purchaser since her husband's death of said real estate, no commissioners are required to assign and admeasure her dower."

On the eighteenth day of June, 1855, Mary Osborn conveyed said land to Benedict Weldon by general warranty deed which was acknowledged before Manuel Martin, a justice of the peace, and duly recorded.

The defendants claim title through mesne conveyances from Benedict Weldon.

Mrs. Osborn died in March, 1886, and this suit was begun on the twenty-sixth day of July, 1895.

The evidence tended to show that the land had been assessed to said Benedict Weldon and his grantees successively and that they had paid all taxes levied against it up to the time of bringing this suit, since the purchase of it by him, and that they had claimed to own it in fee simple during all that time. That they were in the actual, open, notorious and adverse possession of said land from the time said Benedict Weldon took possession of said land up to the present time. That Ebenezer E. Weldon, one of the grantees, planted an orchard on said land, and that O. Ramsbottom, one of the grantees, who became purchaser of same about 1870, built a dwelling and barn and made other lasting and valuable improvements thereon worth from $4,000 to $5,000, soon after said purchase, and continued to reside thereon for more than twenty years, and that defendant, James H. Weldon, is now in possession under title derived from the heirs of said O. Ramsbottom, the latter having died in the year 1895.

All of the papers of the probate court of Daviess county were destroyed by fire in January, 1890. Benedict Weldon and Manuel Martin died many years before the commencement of this suit, and John W.

Blakely and David Enyart were also dead at that time, or their places of residence unknown.

The youngest of the plaintiffs became of age in the year 1866.

At the instance of plaintiffs the court over the objection and exception of defendants declared the law to be as follows:

"The court, sitting as a jury in the above entitled cause, declares the law to be, that if the court finds from the evidence, that Joseph Osborn died seized and possessed of the lands in controversy in the year 1849, leaving his three minor children, the plaintiffs herein, and his widow, Mary Osborn, living upon and in possession of the same, and that said widow deeded the same to Benedict Weldon after her husband's death and that the defendants are in possession of said land and claiming the same as the grantees of said widow through Benedict Weldon and that said widow died within ten years next before the filing of the petition in this case, and that there has never been any legal assignment or admeasurement or setting off of her dower interest in said land, then the finding must be for the plaintiff unless the court further finds that said land was legally sold, by Manuel Martin, administrator of the estate of said Joseph Osborn, deceased, and that said sale was duly approved by the probate court and that the purchase money was paid, and all the terms of such sale were complied with according to law, and that said administrator duly executed and delivered a deed to said Mary Osborn for said land under said sale.

"The court further declares the law to be that under the evidence in this case there never was any legal assignment or admeasurement or setting off of the widow's dower in said land shown."

Defendant prayed the court to declare the law to be as follows:

"1.   The court declares the law to be that under the pleadings and the evidence the findings should be for defendants.

"2.   The court declares the law to be that Mary Osborn was estopped by the proceedings in the circuit court, on her petition, from thereafter claiming quarantine or dower in the premises sued for, and that the statute of limitations began to run in favor of defendants and their grantees from the date of the decree therein."

Which declarations of law the court refused, and the defendants duly excepted.

Where land is in the possession and occupancy of one holding under a widow's dower right therein, which has never been admeasured and set off to her, the statute of limitations does not begin to run in favor of the occupant as against the owner until dower is assigned or the death of the widow.   *Melton v. Fitch*, 125 Mo. 281; *Fischer v. Siekmann*, 125 Mo. 165; *Carey v. West*, 139 Mo. 146; *Shumate v. Snyder*, 140 Mo. 77.   If then defendants were holding the possession of the land under the dower right of the widow only, the statute of limitations did not begin to run in their favor until the death of Mrs. Osborn in March, 1886, and as ten years had not elapsed from that time up to the commencement of this suit on the twenty-sixth day of July, 1895, plaintiffs' cause of action was not barred.   But there were facts and circumstances in proof which tended strongly to show and from which it may be presumed after the lapse of so many years, that Mrs. Osborn acquired title to the land at administrator's sale before she sold and conveyed it by warranty deed to Benedict Weldon, on the eighteenth day of June, 1855, and that he went into possession of it under this deed

as the owner in fee, and not merely of the dower interest.

"A deed will be construed to convey whatever interest or estate the grantor may have in the land, unless it shows his intention to convey a less estate." *Bray v. Conrad*, 101 Mo. 331.

As there was nothing in the deed from Mrs. Osborn to Weldon indicative of an intention to convey a less estate, it must be construed to convey all of her interest in the land including that of her dower interest. *Moore v. Harris*, 91 Mo. 616.

The verbal evidence tending to show that Mrs. Osborn bought the land at administrator's sale, finds strong support in the recital in the judgment of the court fixing her dower in the land, in which it is recited that as she "had become the purchaser since her husband's death of said real estate, no commissioners are required to assign and admeasure her dower," and now after the lapse of nearly half a century, since the execution by her of the warranty deed to Weldon, the death of all persons who are to be presumed to know anything about the transaction, the destruction by fire of the records of the probate court in 1890, the occupation and improvement of the land by defendants and those under whom they claim title, it will be presumed that Mrs. Osborn received at the time of the purchase of the land by her at the administrator's sale, his deed conveying to her the legal title thereto.

Moreover, this view seems to have been acquiesced in by plaintiffs, from the fact that nine years and four months elapsed from the time of the death of their mother, at which time, if at all, they were entitled to the possession of the land before the institution of this suit, while ten years would have been a complete bar

to their action; and they were during that time labor-
ing under no disability to sue.

In speaking of presumptions of this character
Greenleaf says: "Juries are also often instructed or
advised, in more or less forcible terms, to presume con-
veyances between private individuals, in favor of the
party who has proved a right to the beneficial enjoy-
ment of the property, and whose possession is con-
sistent with the existence of such conveyance as is to
be presumed; especially if the possession, without such
conveyance, would have been unlawful, or can not be
satisfactorily explained.   This is done in order to pre-
vent an apparently just title from being defeated by mat-
ter of mere form. . . . . . . . It is sufficient that the party,
who asks for the aid of this presumption, has proved
a title to the beneficial ownership, and a long posses-
sion not inconsistent therewith; and has made it not
unreasonable to believe that the deed of conveyance,
or other act essential to the title, was duly executed."
1 Greenl. on Ev. [14 Ed.], sec. 46.

So in *Richards v. Elwell*, 48 Pa. St. 364, in
speaking of the same subject, it was said: "If the rule
which requires the proof to bring the parties face to
face and to hear them make the bargain or repeat it,
and to state all its terms with precision and satisfac-
tion, is not to be relaxed after the lapse of forty years,
when shall it be?  . . .   There is a time when the rules
of evidence must be relaxed.  We can not summon wit-
nesses from the grave, rake memory from its ashes, or
give freshness and vigor to the dull and torpid brain."
See, also, *Williams v. Mitchell*, 112 Mo. 300.

With the indulgence of the presumption that the
administrator executed to Mrs. Osborn a deed to the
land in accordance with her purchase, it follows that
by her deed to Benedict Weldon the title was vested in

fee in him, and as defendants hold under him, that plaintiffs were not entitled to recover.

Our conclusion is that the declarations of law given on the part of plaintiffs should have been refused, and the first one asked by defendant given.

The judgment is reversed.

