MARTHA E. GIVENS et al., Appellants, v. CHRISTIAN OTT, JR.

**Division One, July 12, 1909.**

1. **EQUITY: Deference to Chancellor.** In an equity case, the appellate court defers somewhat to the chancellor's findings of facts; but if his findings and judgment are not sustained by the evidence and law, the court will proceed to make its own findings and enter judgment as equity and justice require.

2. **CONVEYANCE: Delivery After Death.** The death of the maker of a deed, after signature and acknowledgment, but before delivery, removes all authority in any one to deliver the instrument, and it does not become a valid conveyance.

3. ————: **To Take Effect Upon Delivery.** A deed which in express terms is not to take effect until after the death of the grantors is insufficient as a deed of conveyance.

4. **WILL: Sale and Distribution of Proceeds: Election to Take Land: Residuary Clause.** The will named the testator's wife and daughter as executrixes and provided that "it is my will and desire that they, at such time after my death as they may see fit and proper, sell said land, one-half the amount of the proceeds of the sale of which I will and bequeath to my beloved wife, and whatever shall remain thereof after the payment of my debts I will and bequeath to" a university. A

subsequent clause read: "I hereby will and bequeath unto my dear wife all other property, assets and effects of every kind and description of which I may die seized or possessed." *Held,* that the will invested the legal title in the widow, the only executrix qualifying, and if the university declined to accept the devise, a deed by her conveyed, not only the half, but the whole estate in the land; and if the university did accept the devise, a separate deed from it and another from the widow conveyed the whole estate. The will upon its face shows that testator did not intend to die intestate as to a part of his property, and the residuary clause must be read in connection with the other for an ascertainment of his intention, and that being done the will conveyed all the estate to the named executrixes, and it is immaterial that the property was not sold and the proceeds divided among the devisees, for a sale was not necessary to a vesting of the title, it being the right of the owners of the equitable interest in the proceeds to elect not to have an actual sale but to take the real estate in its unconverted form.

5. **LIMITATIONS: Quarantine.** The widow has no quarantine in land not connected with the mansion house, and her possession under color of title for ten years after her husband's death vests her with title.

   *Held,* by GRAVES, J., that if the lands actually owned by the husband were connected with the mansion house, then the widow was not debarred of her quarantine right.

Appeal from Jackson Circuit Court.—*Hon. C. O. Tichenor,* Special Judge.

AFFIRMED.

*John N. Southern* and *Hughes & Whitsett* for appellants.

(1)    The deed from James Chambers and wife to the Board of Publication of the Cumberland Presbyterian Church of Nashville, Tennessee, was inoperative to convey the title of the land in controversy to the grantee therein named for the following reasons: (a) Because the deed was not delivered in the lifetime of the grantor. This fact was found by the trial judge, and is unappealed from, and unexcepted to, and is therefore conclusive as to defend-

ant.   Huey v. Huey, 65 Mo. 689; Standiford v. Stan-
diford, 97 Mo. 231; McCune v. Goodville, 102 S. W.
997; Sneathen v. Sneathen, 104 Mo. 201; Allen v.
DeGroot, 105 Mo. 442; White v. Pollock, 117 Mo. 467;
Williams v. Latham, 113 Mo. 165.   (b) The deed is
limited to take effect in the future.   It in express
terms provides that it shall not take effect until af-
ter the death of the grantor and his wife.   This makes
it invalid.   3 Washburn on Real Estate, p. 266; 9
Am. and Eng. Ency. Law (2 Ed.), 103; Welsh v.
Foster, 12 Mass. 93; Marden v. Chase, 32 Me. 329;
Murphy v. Gabbert, 166 Mo. 596; Miller v. Holt, 68
Mo. 584; Sneathen v. Sneathen, 104 Mo. 202; 1 Dev-
lin on Deeds, sec. 309.   (c) The grantee was a relig-
ious corporation and could not take the title to this
land under the Constitution of Missouri.   Art. 2, sec.
8, Constitution of Missouri.   No general law has been
passed prescribing "such real estate as may be held
for church edifices, parsonages and cemeteries."
Therefore, a religious corporation can hold the title
to no property in this State.   (2) The only other
title the Board of Publication of the Cumberland
Presbyterian Church of Nashville, Tennessee, could
claim was under the two deeds from Margaret Cham-
bers; one conveying the reversion (after the termi-
nation of her life estate) which she never owned or
claimed, and which in the very deed she recited al-
ready belonged to the Board of Publication; the other
a deed to her life estate in consideration of an an-
nuity.   It follows that the Board of Publication never
had any title to convey to defendant.   (3) The deed
of Margaret Chambers in February, 1901, was not
an execution of the power in the will of James Cham-
bers, and therefore conveyed no title to defendant,
beyond a life estate (if it be she still retained that
by reason of the incapacity of the Board of Publica-
tion to take title), and she was dead before the insti-
tution of this suit.   It is not an execution of the power

under the will.    Owen v. Ellis, 64 Mo. 77; Owen v.
Sweitzer, 51 Mo. 320; Donaldson v. Allen, 182 Mo.
646; Pease v. Pilot Knob Iron Co., 49 Mo. 124; Little-
ton v. Addington, 59 Mo. 275.     (4) This land did
not go to Mrs. Chambers by the residuary clause of
the will.     (5) There was no equitable conversion of
this land to personal property under the will and a
reconversion to real estate by the deeds from Mrs.
Chambers and the trustees of the Cumberland Uni-
versity to defendant; for the following reasons:   1.
Because there was no conversion, until the sale under
the power, which never took place.    2. Because there
was no act, by both of the beneficiaries, electing to
take the land during any time when the power could
have been exercised.    3. Because both the beneficiar-
ies, under the power, renounced the benefits, under
the power, as evidenced by their deeds, and acts. Mrs.
Chambers by her deeds, and the University, declin-
ing to accept the terms of the donation, until after
the close of the estate, and then by deed disclaiming
any interest.    4. Because the power was revoked
by the donor of the power, during his life, by his deed,
conveying the land to his wife and Board of Publica-
tion.    The fact that the deed was not delivered does
not prevent it from operating as a revocation of the
power.    5. Because the acts of Mrs. Chambers and
the University show that neither of them contem-
plated a taking of the land in moieties, in lieu of al-
lowing a sale and dividing the proceeds.   (6)  The
Statute of Limitation can not be applied for the fol-
lowing reasons:   1. The possession of a life tenant
is not and cannot be adverse to the remainderman.
Rothwell v. Jameson, 147 Mo. 601; Shumate v. Sny-
der, 140 Mo. 77.    2. The Statute of Limitation
cannot apply where the possession is consistent with
the title claimed.    Howell v. Jump, 140 Mo. 441. 3.
Where the land is in the possession of one who pur-
chased the widow's right of dower therein, the Stat-

ute of Limitation does not begin to run in his favor or against the owner of the title, until dower is assigned or the widow dies. And the owner's action in ejectment for the recovery of the property is not barred until ten years after the widow's death, if dower had never been assigned. Osborn v. Weldon, 146 Mo. 185; Reed v. Lowe, 163 Mo. 519. (7) The power in the will was given to the wife of testator as executrix, and not as donee of special power. Harding's Adms. v. Wiseiger, 109 S. W. 890; Francisco v. Wingfield, 161 Mo. 558; Littleton v. Addington, 59 Mo. 275. (8) The rule is, if there is an interest on which the instrument can attach, it will not execute the power. 18 Ency. Law, 930; 2 Kent's Com., 34; 2 Wash. Real Property, 325; Pease v. Pilot Knob Iron Co., 49 Mo. 24; Owens v. Switzer, 51 Mo. 322. (9) (a) A power is simply collateral or naked where the power is granted a person who has no interest in the subject-matter of the power. The fact that the donee of the power may have an interest in that which is produced by the exercise of the power does not render it a power coupled with an interest. Green v. Cole, 103 Mo. 70; Schanewirk v. Hoberecht, 117 Mo. 22; Burk v. Priest, 50 Mo. App. 310; Russell v. Russell, 36 N. Y. 581. (b) A mere common law power, not coupled with an interest, is revocable by the grantor at pleasure. 22 Am. and Eng. Ency. Law (2 Ed.), 1133. (10) The will left the land to descend to the heirs, subject to be divested upon the exercise of a power. Eneberg v. Carter, 98 Mo. 647; Compton v. McMahan, 19 Mo. App. 494; Christer v. Meddis, 6 B. Mon. 35; Haggards v. Routs, 6 B. Mon. 249; Snowhill v. Snowhill, 3 Zab. 447; Hurlind v. Tuthill, Saxt. 141; Fluke v. Fluke, 1 Green Ch. 478; Morris v. Stephenson, 128 Mo. App. 338. This power was never exercised, but was revoked by the deed of both the donor and donee of the power. Deed of 29th day of June, 1876. Where the donee fails to exercise

the power it leaves the title where it was on the death of the testator, in this case in the heirs at law. Evans v. Folks, 135 Mo. 397; Shouler on Wills, secs. 479, 521; 1 Jarman on Wills (2 Am. Ed.), chap. 21, sec. 1, pp. 516, 517; 4 Kent's Com., 510 and note; 4 Kent's Com. (14 Ed.), sec. 441 and note; Tongue v. Nutwell, 13 Med. 415; Massey's Appeal, 88 Pa. St. 470; Johnson v. Hallifield, 82 Ala. 123; Van Kleek v. Ref. Dutch Church, 5 Paige 611.    (11) The power of sale in this case was attached to the office of executrix and expired with final settlement of the estate. Francisco v. Wingfield, 161 Mo. 557; Littleton v. Addington, 59 Mo. 275.    (12) There could be no reconversion unless the parties entitled to the proceeds of the sale elected to take the land during the time when the power to sell was alive, i. e., during the executorship.    Bisham's Prin. Eq., sec. 323; Hallaway v. Radcliff, 23 Beav. 163; Willings v. Peters, 7 Pa. 292; Beatty v. Byers, 18 Pa. 105.    (13) The acceptance of a devise is essential to title by devise; just as much so as acceptance of title by deed.    Ex parte Fuller, 2 Story 327; Brown v. Wood, 17 Mass. 74; De Freese v. Lake, 109 Mich. 421; Allison v. Smith, 16 Mich. 419.

*Gates, Sea & English* and *Gage, Ladd & Small* for respondent.

(1) The Cumberland University and Mrs. Chambers being entitled to the fund arising from the sale of the land under item three of the will, their deeds, though made at different times, transferring their right, title and interest in the land to the defendant Ott, transferred to him the right to the whole fund, and being entitled to the fund he had a right to claim the land.    Williams v. Lobban, 206 Mo. 399; Prentice v. Janssen, 79 N. Y. 478; Armstrong v. McKelvey, 104 N. Y. 184; Craig v. Leslie, 3 Wheat. 576; Trask

v. Sturgis, 170 N. Y. 482; Baker v. Copenbarger, 15 Ill. 103; De Vaughn v. McLeroy, 82 Ga. 687; Condit v. Bigalow, 64 N. J. 504; Evans Appeal, 63 Pa. St. 183; Pomeroy's Eq. Jur. (2 Ed.), sec. 1175; 2 Jarman on Wills (Am. notes by Randolph & Talcott), p. 188; Adams Eq. (7 Am. Ed.), 137; Martin v. Andrews, 111 N. Y. Supp. 40. (2) Mrs. Chambers was the general residuary legatee and devisee. The words of the residuary clause are amply sufficient to carry all undisposed of property, whether real or personal, of which the testator might die seized and show conclusively that he did not intend to die intestate as to any of his property. Carr v. Dings, 58 Mo. 400; Watson v. Watson, 110 Mo. 164; Sullivan v. Larkin, 60 Kan. 545; Cogswell v. Armstrong, 2 K. & J. 227; Moffett v. Elmdorff, 152 N. Y. 475. (3) The distinction as to lapsed legacies passing, and lapsed devises not passing by a general residuary clause, pointed out in the authorities cited by appellants, has long since ceased to exist in most of the States of the Union, including Missouri. This distinction was based on the rule at common law that a will as to personal property spoke as of the time of the testator's death, and as to real estate, only as of the date of the will, but under our statute a will speaks both as to personalty and real estate as of the time of the testator's death. Liggett v. Hart, 23 Mo. 127; Mueller v. Buenger, 184 Mo. 458. Wherever similar statutes exist, it is held that lapsed devises of real estate, as well as lapsed legacies, pass under a general residuary clause. Thayer v. Wellington, 91 Mass. 295; Cruikshank v. Home, 113 N. Y. 337; Reeves v. Reeves, 73 Tenn. (5 Lea) 653; Smith v. Curtis, 29 N. J. L. 345; Molineaux v. Reynolds, 55 N. J. Eq. 187; Drew v. Wakefield, 54 Me. 291; Holbrook v. McCleary, 79 Ind. 167; West v. West, 89 Ind. 529; Garrison v. Day, 76 N. E. (Ind.) 188; Johnson v. Holifield, 82 Ala. 123; Moffett v.

Elmendorf, 152 N. Y. 475; Cogswell v. Armstrong, 2 K. & J. 227; Borland on Wills, sec. 62. (4) Therefore, whether the provision made for Mrs. Chambers and the trustees of the university in the third clause of the will was a legacy or a devise, if for any reason it lapsed or failed to take effect, as claimed by plaintiffs, then it fell into the residue of the estate and became vested in Mrs. Chambers by the fifth or residuary clause of the will, and through her by the deeds shown in evidence, the title to the land in question became complete and perfect in defendant Ott. (5) It is also suggested in appellant's brief that the Cumberland University refused the legacy or devise to it and therefore it did not take effect. If this were so, it would be considered a lapsed legacy or devise, and would pass under the residuary clause to Mrs. Chambers and by her deed to Ott. Peckham v. Newton, 15 R. I. 321; Garrison v. Day, 76 N. E. (Ind.) 188. (6) As to property in which the widow has simply a right of unassigned dower and no right of quarantine the statute runs in her favor against the heirs, in case she remains in possession claiming to hold adversely to the heirs, as was done here for nearly thirty years. Sell v. McAnaw, 138 Mo. 267; McLanahan v. Porter, 10 Mo. 746; Smith v. Shaw, 155 Mass. 297. Of course, the widow's adverse possession inured to the benefit of defendant Ott and his grantors, the Board of Publication and the Cumberland University, because they all claimed in privity with her—claiming as they did under the same deed and will of her husband. Hickman v. Link, 97 Mo. 482.

WOODSON, J.—The plaintiffs are the collateral heirs of James Chambers, deceased, and they brought this suit under section 650, Revised Statutes 1899, to have the court ascertain and determine the title to the real estate described in the petition.

The petition contains two counts; one based upon said section, and the other is ejectment in the usual form. The answer is in the nature of a cross-bill, based upon the same section of the statute, and a plea of the Statute of Limitations. The reply was a general denial. A trial was had before the court without the intervention of a jury, which resulted in a judgment in favor of defendant, from which plaintiffs appealed.

The substantial facts of the case are undisputed, and are stated as follows in appellants' brief, with slight interpolations in one or two places.

"On the trial it was admitted that both parties claim through James Chambers, deceased, and that he was in possession of the land at the time of his death and that he owned the land. Plaintiffs introduced evidence tending to prove that they were and are the heirs at law of the said James Chambers. It was admitted that the defendant was in possession at the time the suit was brought and tried. The land in controversy is the west half of the southwest quarter of section 22, and the east half of the southeast quarter of section 21; all in township 49 of range 32 in Jackson county, Mo.

"James Chambers probably entered this land, at any rate he owned it as far back as 1858. In that year, at a partition sale of the land of his wife's father, he bought the west half of the east half of section 22, which is separated from this tract 1320 feet by an intervening 80 acres lying north and south, and the southwest quarter of the southeast quarter of section 15, all in the same township and range, making 200 acres. This tract is referred to in the testimony as the 200-acre tract, and the land in controversy is referred to as the 160-acre tract. They are both shown, and their relation to each other, by the accompanying plat.

"He and his family lived on the 200-acre tract, and used both tracts together as one farm, the house being towards the south of the 200-acre tract. This they did up to the time of his death and the death of his widow, who survived him many years. His family consisted of a wife and two children; one, a boy, who was killed in the battle of Independence on August 11, 1862; the other a daughter, named Evaline, who married a man named Smith, and is referred to in the evidence as Evaline Smith.

"On April 29, 1865, James Chambers and his wife made a deed of gift to Evaline Smith, of the 200-acre tract, but continued to live on it as before.

"On July 27, 1868, James Chambers made a will, to the following purport:

"'In the name of God, Amen: I, James Chambers, of the county of Jackson, in the State of Missouri, although afflicted in body, being of sound and disposing mind and memory, do make and publish this my last will and testament, as follows:

"'Item 1st. I will that my body be buried in a decent Christian manner.

"'Item 2nd. That my funeral expenses and all my just debts be paid as soon after my decease as possible out of my personal property or other of my estate.

" 'Item 3rd. I am now the legal owner in fee of the following described tracts of land situated in county of Jackson, State of Missouri, to-wit: The west half of the southwest quarter of section 22, and the east half of the southeast quarter of section 21, all in township 49, range 32, and it is my will and desire that my executrixes hereinafter named and appointed at such time after my death as they may see fit and proper, sell said land at either public or private sale on such terms as they may think best, one-half of the amount of the proceeds of the sale of which I will and bequeath to my beloved wife, Margaret B. Chambers, and whatever shall remain thereof after the payment of my funeral expenses, just debts and necessary expenses of settling up my estate, I will and bequeath to the Theological Department of the Cumberland Presbyterian University, located at Lebanon, Tenn., and to be paid to the proper officers of said University by my said executrixes so soon after they shall sell said land and collect the proceeds thereof as may be convenient, and to be held and used by said officers of said University as part of the endowment fund of said Theological department thereof.

" 'Item 4th. Having heretofore amply provided for my daughter, Mrs. Eva C. Smith, I have made her no bequest herein.

" 'Item 5th. I hereby will and bequeath unto my dear wife all other property, assets and effects of every kind and description of which I may die seized and possessed.

" 'Item 6. I appoint my dear wife, Margaret B. Chambers, and my dear daughter, Mrs. Eva C. Smith, executrixes of this my last will and testament.

" 'Witness my hand and seal, this 27th day of July, 1868.'

"On the 28th of May, 1870, Evaline Smith made her will, and in November, 1873, died, and the will was probated on November 14, 1873. In it she says:

" 'I will and bequeath to the Trustees of the Cumberland University at Lebanon, Tenn., for the endowment of and professorship in part, of either the Theological Department, or the concurrent course of said University as the Trustees think best, one tract of land lying in Jackson County, Missouri, to-wit: The southwest quarter of the southeast quarter of section 15, township 49 of range 32; also the west half of the southeast quarter and the west half of the northeast quarter of section 21, same township and range. This property to remain in the hands of my mother, Mrs. M. Chambers, until her death in case she should survive me, and then to go to the Trustees of Cumberland University, but in this case it is only the use of the land that is bequeathed to my mother and not the right to dispose of it.'

"James Chambers died on the 29th of June, 1876. About thirty minutes before his death he and his wife, Margaret Chambers, signed and acknowledged a deed of gift of the 160-acre tract (the land in controversy) to the Board of Publication of the Cumberland Presbyterian Church of Nashville, Tenn."

And the following is the finding of Judge Tichenor regarding the execution of that deed:

"The death of James Chambers was due to a kick of a mule received a few days before he died. About an hour before his death, he executed a deed to the land in controversy to the Board of Publication of the Cumberland Presbyterian Church of Nashville, Tennessee. At the time, he was suffering greatly and the evidence is not so clear as to his mental condition as I could wish it, yet it is certain that he wished and intended to make this deed some time before he did so, and all say that he recognized the official who took the acknowledgment. I find that he had sufficient capacity to make a deed—knew and intended what he was doing when he did so.

"I find, however, that the grantor died while the deed was in the hands of the official who took the acknowledgment and before he signed the certificate. This deed was recorded July 7, 1876, and is for a recited consideration of one dollar; it is the usual form; that it ends as follows:

" 'To have and to hold the same unto said 2nd party, their successors and assigns forever; this conveyance not to take effect till our death and that of the survivor of us.

" 'Witness our hands and seals this 29th day of June, 1876.

his

" 'James X Chambers,        (Seal).

mark

" 'M. B. Chambers,        (Seal).' "

"On the 22nd of July, 1876, after the death of James Chambers, his widow, Margaret Chambers, probated the will which he had executed in 1868 and qualified as executrix, and made final settlement on the 11th day of November, 1878, and was discharged as such executrix.

"James Chambers resided on the 200-acre tract and used the two pieces of land as one farm from 1858 to the time of his death, and his widow after him until her death. James Chambers and his son and daughter, Evaline Smith, and his widow, all died without descendants. The plaintiffs are descendants of his brothers and sisters. On November 14, 1896, Margaret Chambers made a deed to the Board of Publication of the Cumberland Presbyterian Church of Nashville, Tenn. This is a quit-claim deed and 'remises, releases and forever quit-claims unto the second party, subject to the life estate hereinafter described, the following lands [here describes the 160 acre tract]. Said first party reserves a life estate together with the possession, rents and profits thereof.'

"On November 4, 1898, Margaret B. Chambers made a warranty deed to the Board of Publication of the Cumberland Church of Nashville, Tenn. This deed recites: 'Whereas the party of the first part is the owner for life and the party of the second part is the owner of the remainder interest in the real estate hereinafter described, and whereas the party of the first part has agreed in consideration of an annuity to be paid to her during her natural life by the party of the second part to sell her life estate to said property; Now, therefore, the party of the first part does hereby grant, bargain and sell unto the party of the second part, its lawful successors and assigns, said real estate, situate in Jackson county, Missouri, and described as follows, to-wit:' (Describes the 160-acre tract.)

"On the 19th day of February, 1901, the Board of Publication of the Presbyterian church of Nashville, Tenn., made a warranty deed to the land in controversy to the defendant, Christian Ott, Jr. This is an ordinary warranty deed, with the usual covenants.

"Four days before that on the 15th day of February, 1901, Margaret B. Chambers made a deed to Christian Ott, Jr., conveying this land to him.

"On the 22nd day of February, 1901, the Trustees of the Cumberland University made a deed to defendant, Christian Ott, Jr., in which they recite: 'Whereas the Board of Publication of the Cumberland church of Nashville, Tenn., is the owner of a tract of land in Jackson county, Missouri [here it describes the land in controversy]; and whereas the Board is about to sell the land to Christian Ott, Jr., and whereas it has been suggested that possibly under the will of James Chambers the undersigned may have some interest in the same and a deed from the undersigned is desired by said Ott; Now, therefore, the undersigned claiming no interest whatever in said property does

nevertheless hereby grant, bargain, sell, quit-claim and convey to said Christian Ott, Jr.,' etc.''

The defendant claims title under the will of James Chambers and these deeds.

I. Counsel for appellants assign many errors to the rulings of the court during the progress of the trial, but viewing the case as we do, it will be necessary to consider but few of them.

The first insistence of appellants' counsel is, the deed from James Chambers and his wife to the Board of Publication of the Cumberland Presbyterian church was inoperative to convey the title to the land in controversy to the grantee therein named, for the reasons, first, the deed was not delivered in the life time of the grantor; and, second, that the deed is limited to take effect in the future; and, third, the grantee was a religious corporation and could not take the title to this land under article II, section 8, of the Constitution of Missouri. We will consider those objections to the deed in the order stated.

The evidence shows the grantor in the deed resided some miles from the city of Independence, in the country, and that on the day of his death he sent for Horace Sheeley, a justice of the peace, who also resided in Independence, to go out to his place and take his acknowledgment to the deed; that when he reached the residence of Mr. Chambers he found him *in articulo mortis,* almost if not quite unconscious—however, he recognized Mr. Sheeley, but never made any response when Sheeley asked him if he acknowledged the instrument to be his act and deed. Sheeley at first refused to take his acknowledgment, for the reason, he said, Chambers was half dead and did not have sense enough to make a deed, but after some persuasion he consented to do so, and by the assistance of Dr. Sewall, who held Chambers' hand and placed the pen to the deed, Sheeley made his mark

thereon, and went through the form of taking his acknowledgment, as before stated. Before Sheeley had time to reach Independence, and before he signed the certificate of acknowledgment to the deed, Mr. Chambers died.

Upon that evidence the trial court found Chambers "had sufficient capacity to make a deed—knew and intended what he was doing  when he did so." While counsel for appellants do not complain of that finding of the trial court, yet, in our opinion, it is entirely unsupported by the evidence in the case; and should not be passed by and permitted to stand as a precedent in future litigation.

"It has been uniformly held that in equity cases this court would on appeal proceed *de novo* to hear and determine the cause, deferring somewhat to the findings of the trial court; but if its findings and judgment were not sustained by the evidence and law, then this court would proceed to make its own finding and enter judgment as equity and justice might require.  [Blount v. Spratt, 113 Mo. 48; Courtney v. Blackwell, 150 Mo. l. c. 267; State ex rel. v. Jarrott, 183 Mo. 204.]"  [Gibbs v. Haughowout, 207 Mo. l. c. 391.]

But, waiving that point, we will pass to the first objection urged by counsel against the validity of said deed, namely, that it was not delivered in the life time of the grantor, Mr. Chambers.

The evidence shows that J. W. Buchanan, a lawyer of Independence, was employed to draft this deed; that he did so, and sent it with Sheeley out to Mr. Chambers for the latter's acknowledgment; that before Sheeley signed the certificate of acknowledgment, and before he delivered the deed to Buchanan, Chambers died.  Under this evidence the trial court found that there had been no delivery of the deed during the life time of Chambers.  In that finding we concur, which is supported by an unbroken line of authorities.

[Huey v. Huey, 65 Mo. 689; Standiford v. Standiford, 97 Mo. 231; McCune v. Goodwillie, 102 S. W. 997; Sneathen v. Sneathen, 104 Mo. 201; Allen v. DeGroodt, 105 Mo. 442; White v. Pollock, 117 Mo. 467; Williams v. Latham, 113 Mo. 165.]

The death of Chambers removed all authority of Sheeley, Buchanan and all others to deliver the deed thereafter. This is elementary and needs the citation of no authority to support it.

We are also of the opinion that the second objection made to this deed is well taken. The deed in express terms provides that it is not to take effect or be in force until after the death of the grantors, James Chambers and his wife. The law of this State is well settled that an instrument to be good as a deed must convey a present interest in the property attempted to be conveyed, and where it is to take effect and become operative alone upon the death of the grantors, it is testamentary in character and is insufficient as a deed of conveyance. [ Murphy v. Gabbert, 166 Mo. 596; Miller v. Holt, 68 Mo. 584; 1 Devlin on Deeds, sec. 309; 3 Wash. on Real Prop., p. 266.]

The third objection urged against the validity of this deed involves the question of fact, as to whether or not the Board of Publication of the Cumberland Presbyterian church of Nashville, Tenn., was a religious corporation. The evidence upon that question is somewhat voluminous and conflicting; and, on that account, the opinion would be greatly extended in length should we undertake to determine whether or not under our Constitution said Board could legally receive and hold real property located in' this State. For that reason we will not pass upon the question, as' no practical good would result therefrom since we have already held the deed to be void for three other reasons.

II.    It is next contended by counsel for appellant that neither of the two deeds from Margaret Chambers to said Board, one, a quitclaim deed, dated November 14, 1896, and the other a warranty deed, dated November 4, 1898, conveyed to it any right, title or interest in or to the land in controversy.    The former purported to convey the reversion after the termination of her life estate; and the latter her life estate therein in consideration of the annuity therein mentioned.

It is true, as contended by counsel, said deeds did not convey to said Board the interest she acquired in this land through and by virtue of the deed executed by her husband on June 29, 1876, for the reason that said deed was void, as we have shown and held in paragraph one of this opinion; but it does not necessarily follow therefrom that her deeds of November 14, 1896, and of November 4, 1898, did not convey the equities in said land to said Board, for the reason that if she acquired title thereto under the will of her husband, then, unquestionably, they conveyed the same to said Board, if it was capable of receiving it.

III.    This brings us to the consideration of the main legal proposition involved in this case, and that is, what interests, if any, were disposed of by the will of James Chambers, and to whom, if any one, were they given?

Counsel for respondent contend that, conceding the deed of June 29, 1876, executed by James Chambers and wife to the Board of Publication of the Presbyterian church, to be void, as insisted by appellants, then the title to the land in question remained in Chambers up to the time of his death, and that upon his death the title passed under and by virtue of the will to his executrix, with directions for her to sell same, and to retain one-half of the proceeds thereof for her own use and benefit, and to pay over the other

one-half to the Theological Department of the Cumberland Presbyterian church, as provided for by the terms of the will; or, if it be true, as insisted by counsel for appellants, that the University refused to accept the bequest made to it, then counsel for respondent contend that the one-half of the proceeds of said sale intended for the University also passed to and became vested in his widow, Margaret Chambers, by virtue of the residuary clause of the will.

Counsel for appellants deny that contention of respondent, and insist that the residuary clause did not and could not have any reference to property disposed of by any previous clause of the will.

The third clause gave one-half of the proceeds of the sale of this land to the widow, and the other half to the University, as before stated; and the fifth clause reads as follows: ''I hereby will and bequeath unto my dear wife all other property, assets and effects of every kind and description of which I may die seized and possessed.''

Having heretofore reached the conclusion that James Chambers never parted with his title to this land during his life, then it must be conceded that he died seized and possessed of it; and if the University declined to accept the one-half of the proceeds of the sale thereof, as provided for under the third clause of the will, as insisted by appellants, then it must have passed to and become vested in his widow by virtue of said residuary clause, without the above contention of counsel for appellants is tenable. In our judgment that contention of counsel for appellants is more plausible than sound. This identical question came before this court in the case of Carr v. Dings, 58 Mo. 400. The will in that case gave the entire estate to the executors in trust, to pay debts, and after the payment of the debts, it provided, ''To convey what may remain of my estate to my wife, Susan Kerr, to be used and appropriated by her in and about her mainten-

ance and support, with power to my said wife to dispose of one-fourth of same remaining at the time of her death, as to her shall seem fit, and the residue of what shall so remain at her death to pass to and be vested in the children of my deceased brother, George Washington Kerr.'' The widow died without disposing of the one-fourth she was authorized to dispose of, and the question was whether the children of George Washington Kerr got all of the residue or only three-fourths of it. The court held that the whole of it passed to them, and on pages 406 and 407, said:

"It is insisted that the 'residue of what remains,' as the words are used in the will, confines or limits the bequest to the children of George Washington Kerr, to three-fourths of the estate, the same being what would remain after excluding the one-fourth which was subject to the disposition of the widow, and that as the widow made no disposition of the fourth of the property remaining at her death, as to that part of the estate the testator died intestate, and it would descend to his heirs or next of kin under the law.

"By a technical construction of the language used in the will, the bequest to the children might be so limited; but in construing wills, the intention of the testator is the object to be obtained, and in order to ascertain this object, it frequently becomes necessary to look at the whole will, by which it will sometimes become necessary to qualify particular clauses so as to bring them in harmony with the general intention as the same may be indicated by other clauses. When a doubt arises as to the extent of the application of the word 'residue' as used in a will, whether it was intended to apply to the residue of the whole estate, or to be confined to a particular part of the estate, courts generally incline to extend to it the whole estate, where there is no other residuary clause. [2 Redf. Wills, 448.]

"In reference to the will under consideration it appears to have been the intention of the testator to dispose of his whole estate and to die intestate as to none of it."

In Watson v. Watson, 110 Mo. 164, the testator first gave a life estate in a certain 240 acres of land to his wife, and then provided (p. 168): "I further will in regard to my other land that if the heirs can agree upon a satisfactory division of them that they divide them to their own notion." The court held that by the words "my other land" in this last quoted clause, the testator included the remainder in the 240 acres of land devised to his widow for life. Judge BLACK delivered the opinion of the court, and said, p. 171: "The real question is whether the testator intended these words should include this remainder. One of two things must be true, and that is, that it is included, or that there is an intestacy as to it. The will, taken as a whole, shows a very clearly expressed purpose on the part of the testator to dispose of all of his property, real and personal. This purpose can only be executed by allowing the words 'my other land' to include the estate in remainder in the two hundred and forty acres."

In Sullivan v. Larkin, 60 Kan. 545, 57 Pac. 105, the words of the residuary clause were: "I will and devise that all other property which I may own at the time of my death, both in Kansas and Missouri," shall be sold, etc. Held to be a general residuary clause, the court saying, "This clause of the will is general and inclusive, and the tendency of the courts is to give the widest and most liberal construction to a residuary devise. [Jarman on Wills (Bigelow's 6 Ed.), p. 635.]"

In Cogswell v. Armstrong, 2 Kay & Johnson 227, the residuary clause was almost precisely as in the case at bar. There it was, "And I give, devise and bequeath all other real and personal estate of which

I may die possessed unto and equally among my children.'' Held a general residuary clause and that it passed a prior specific devise of land which had lapsed.

''The intention to carry lapsed and void devises, as well as the estate undisposed of, to the residuary legatee, is not to be defeated in construction by expressions like 'all other land' or 'all land not hereinbefore devised.' '' [Schouler on Wills (1 Ed.), sec. 521.]

In Moffett v. Elmendorf, 152 N. Y. 475, the testator gave ''all my real estate except the portions thereof hereinafter otherwise given or disposed of.'' The court held this to be a general residuary clause, and to pass to the wife the specific devises, afterwards made, but which failed to take effect, and said (p. 488): ''Moreover a gift of 'all other land' or of 'all land not hereinbefore devised' is regarded as a devise of the residue.''

If the residuary clause should be read and construed independent of the other provisions of the will, then there would be much force in the contention of appellants' counsel, because such technical construction would exclude the idea that the testator intended by that clause to give to his wife any of the property disposed of or attempted to be disposed of by him in the previous paragraph of his will; but, as said in the case of Carr v. Dings, supra, ''the intention of the testator is the object to be obtained, and in order to ascertain this object, it frequently becomes necessary to look at the whole will, by which it will sometimes become necessary to qualify particular clauses so as to bring them in harmony with the general intention as the same may be indicated by other clauses.'' So in this case, when we read the entire will it is manifest the testator was attempting to dispose of his entire estate, giving a portion of it to the Theological Department of the Cumberland Presby-

terian Church, and the residue to his wife, and to no one else; and by the insertion of the residuary clause he intended to give to her all of his property of which he might die seized and possessed. This language was sufficiently comprehensive to include the property willed to the church, if for any reason that bequest should become inoperative. In arriving at this conclusion we indulge the presumption, that where a testator executes a will, it is presumed he intended to dispose of his entire estate thereby, and not to die intestate as to a portion of it.

We, therefore, conclude that under the third clause of the will, Mrs. Chambers, as executrix, took the legal title to all of the land in question, and the equitable interest to one-half of the proceeds of the sale of the same; that (conceding, as counsel for appellants contend, the University declined the bequest made to it), the portion of the proceeds of the sale of the land willed to the University passed to and became vested in Mrs. Chambers also, under and by virtue of the residuary clause of the will; that the legal title to this land so acquired by Mrs. Chambers was subject to be divested by a sale thereof by her as executrix of the will, as was contemplated by the will, and, no such sale having been made, the legal title remained in her, and she conveyed both the legal and equitable interest in the proceeds of the same by her deeds, hereinbefore mentioned, to the respondent Ott and his grantor, the said Board of Publication; and, that, if it be true said University did not decline the bequest made in its behalf, then Ott became the owner of that interest under and by virtue of the deed, dated February 22, 1901, executed to him by the Trustees of the Cumberland University, whereby it conveyed unto him all its right, title and interest in and to this land.

From the foregoing observations it is seen that it is wholly immaterial whether the University accepted the bequest made to it or not, for if it did, then its deed to Ott conveyed that interest to him; but if it declined it, then that interest passed to Mrs. Chambers under the residuary clause of the will, and was by her conveyed to Ott, by her deeds before mentioned. So, in either event, Ott is the owner of both the legal and equitable title to those funds, and under the doctrine of equitable conversion and reconversion he had the right to the land itself. And our reasons for so holding are stated in the case of Williams v. Lobban, 206 Mo. 399. In that case Judge GANTT, in a most exhaustive and able opinion, on pages 417 and 418, stated the law as follows:

"As we construe these cases (referring to certain cases cited by counsel for defendant) they unquestionably do hold that less than the whole number of beneficiaries cannot produce a reconversion of the estate into real estate, but the cases we have cited hold that each beneficiary for himself may make his election by selling and conveying his individual interest, and that if they all make conveyances a reconversion will be held to have taken place we think is inevitable from the doctrine announced in Reed v. Underhill, 12 Barb. 113, and the cases that we have cited approving that case and our own decision of Eneberg v. Carter, 98 Mo. 647. Indeed, in McDonald v. O'Hara, 144 N. Y. 566, it was expressly said: 'It is, however, well settled that the persons who are exclusively entitled to the fund arising from the sale may, if they so elect prior to the actual sale, take the real estate in its unconverted form.' It must logically follow that, if each and every one of the beneficiaries conveys his interest to a common grantee, such common grantee becomes the person entitled to the fund which would

arise from the sale and subsequently may elect to take the real estate as land and not as personalty and thus dispense with the sale. The case of Mandlebaum v. McDonnell, 29 Mich. 78, on this point is exactly like this case; there the testator devised to his wife an estate for her life or widowhood; and then provided for a sale of the land and distribution of the proceeds among the children; the children by separate deeds conveyed their respective interests in the property and by mesne conveyances, all the right, title and interest conveyed by the deeds of the children were transferred to the complainant. And although there was a limitation in the will upon the power of the children to convey, the court in a most learned and exhaustive opinion held that the complainant had acquired all the interest in the property and as such was entitled to take the land free from the power of sale contained in the testator's will. Our conclusion is then that as it clearly appears that the plaintiff has acquired by proper conveyances and proceedings the interest of all the beneficiaries under the will of Samuel Lobban, he would, in the event of a sale under the power contained in the will, be entitled to the entire proceeds, and is entitled to the land, and is not bound to submit to a sale of the property and the attendant expenses and costs thereof, and the court below was right in granting him a perpetual injunction to prevent the sale.''

The following authorities announce the same rule of law: Prentice v. Janssen, 79 N. Y. 478, 484, 5, 6; Armstrong v. McKelvey, 104 N. Y. l. c. 184; Craig v. Leslie, 3 Wheat. 563, 576; Trask v. Sturges, 170 N. Y. 482; Baker v. Copenbarger, 15 Ill. 103; De-Vaughn v. McElroy, 82 Ga. 687; Condit v. Bigalow, 64 N. J. 504; Evan's Appeal, 63 Pa. St. 183; Pomeroy's Eq. Jur. (2 Ed.), sec. 1175 et seq.; 2 Jarman on Wills (Am. Notes by Randolph & Talcott), top p.

188; Adams' Eq. (7 Am. Ed.), 137; Martin v. Andrews, 111 N. Y. Supp. 40, decided May 9, 1908.

IV. Counsel for respondent also interposed the Statutes of Limitations as a defense to this suit, and insist that the record discloses that the respondent and those through whom he claims title have been in the exclusive, open, notorious, adverse and continuous possession of this land, claiming to be the owners thereof against all the world in general and especially against the heirs of James Chambers, deceased, ever since June 29th, 1876, the date of his deed purporting to convey this land to the Board of Publication of the Cumberland Presbyterian Church, and reserving a life estate therein to his wife.

Counsel for appellants, upon the other hand, insist that the statutes have not run against their clients, for the reason that said deed was void; and instead of Mrs. Chambers claiming and holding possession of the land under that deed, she was in possession of that land and occupied it as the widow of James Chambers, and her dower never having been assigned, her possession and the possession of those claiming under her were not adverse to appellants.

The law is well settled that where the widow is in the possession and occupancy of land by virtue of her dower interests, or by one who holds it by virtue of his purchase of those interests, the Statutes of Limitations do not begin to run in her or in his favor as against the owner of the title until dower is assigned or the death of the widow occurs. Nor is the owner's action of ejectment for the recovery of the property barred until ten years after the widow's death, if dower had never been assigned. [Osborn v. Weldon, 146 Mo. 185; Reed v. Lowe, 163 Mo. 519; Thomas v. Black, 113 Mo. 66; Brown v. Moore, 74 Mo. 633.]

The reason for this rule is, that under section 2955, Revised Statutes 1899, and previous revisions, the widow is entitled to the possession and occupancy of the mansion house of her deceased husband, and the messuages or plantation thereto belonging, called "her quarantine," until dower is assigned. [Roberts v. Nelson, 86 Mo. 21.] And during said occupancy, she holds possession of the premises by virtue of her quarantine, and not adversely. [Thomas v. Black, supra.]

But the trouble with that law is, it does not fit the facts of this case, for at the time of the death of her husband, James Chambers, he had no mansion house of his own; he and his wife were residing with and upon the farm of their daughter, Evaline Smith, and had been ever since April 29, 1865, the date upon which he conveyed the 200-acre farm to Evaline.

The law seems to be well settled that the right of the widow to the possession and occupancy of the messuages and plantation is incidental to and dependent upon her possession and occupancy of the mansion house of her deceased husband, and that without the latter she has no right to the possession and occupancy of the former by virtue of her quarantine; and if she occupies the plantation without having the mansion house, then that possession is not incidental to her quarantine, and the latter will not arrest the running of the Statutes of Limitations.

In the case of McKaig v. McKaig, 50 N. J. Eq. (5 Dick.) 325, under a statute identical with ours as to quarantine, it was held that the widow had no quarantine in the messuages and plantation of the husband where the widow owned the homestead on which she and her husband lived at the time of his death. In that case she owned the homestead or mansion in which she and her husband resided at the time of his death, and the husband owned an adjoining tract of

land which was used in connection with her home-
stead; and the court held she had no quarantine in
the adjoining tract of her husband, for the reason
that the mansion house in which he resided was not
his but belonged to her, and, consequently, his land
was not land belonging to the husband's mansion
house, which was necessary to give the widow a right
of quarantine to his land.

In the case of Sell v. McAnaw, 138 Mo. 267, where
the evidence showed that the land in question was no
part of the plantation of the deceased husband, nor
in anywise connected with his mansion house, it was
held that the widow was not entitled to the posses-
sion of and use of the property, under the quarantine
statute, and not at all until her dower was assigned
to her, and that in the meantime the statute would
run in her favor and against the heir.    [See also
McClanahan v. Porter, 10 Mo. 746; Smith v. Shaw,
150 Mass. 297.]

Section 2954, Revised Statutes 1899, reads as fol-
lows:  "Until dower be assigned, the widow may re-
main in and enjoy the mansion house of her husband,
and the messauges or plantation thereto belonging,
without being liable to pay any rent for the same."

The reasoning of that court in those cases ap-
plies equally well to this statute.   The daughter of
James Chambers, Evaline Smith, and not he, owned
the mansion in which he resided at the time of his
death, and he, instead of owning the adjoining tract
of land, the one in controversy, it was located some
distance away from the mansion of Evaline.   That be-
ing true, it cannot be said that his land was "the
messauges or plantation" belonging to the "mansion
house of her husband," and, consequently, she never
had quarantine in this land; and, having no quaran-
tine, there was nothing to prevent the statute from
running when she took possession of this land un-
der his deed, dated June 29th, 1876.   Though inop-

erative to convey title, as before held, yet that deed was color of title; and when she and those claiming under her occupied the land under that deed for a period of more than ten years, claiming title thereunder, the statute not only barred appellants' cause of action, but also transferred the title to the land in question to her and them.

We, therefore, hold that respondent also acquired title to this land by virtue of the Statutes of Limitations.

Entertaining the views before expressed, it becomes unnecessary to discuss any of the other numerous questions presented by counsel in their respective briefs.

We are, therefore, of the opinion that the judgment was for the right party, and should be affirmed. It is so ordered.

All concur. *Graves, J.,* in separate opinion.

## SEPARATE CONCURRING OPINION.

GRAVES, J.—I concur in the result of this case as reached by my Brother WOODSON. I do not concur in all that is said in paragraph one of his opinion. That paragraph to my mind properly holds that there was no delivery of the deed, and other things therein decided are unnecessary for the case in hand. No delivery defeats the deed. Whether the party making it was in such state of mind as to be able to make a deed is immaterial, if in fact it was not delivered, and upon the question of mental capacity, I express no opinion. To that portion of this paragraph one, which holds that the deed is testamentary in character, I do not agree. The doctrine therein announced in my judgment trenches upon the holding of this court in O'Day v. Meadows, 194 Mo. 588. The deed being ineffective for want of delivery, this too is un-

necessary for a decision of the case, and might be said to be *obiter,* but I prefer to disavow the holding on this particular point, although it might be considered as mere *obiter dictum.*

Nor do I concur in all that is said in paragraph four of the opinion. This portion of the opinion seems to be opposed to the rule expressed by SHERWOOD, J., in Gentry v. Gentry, 122 Mo. l. c. 217, whereat it is said: "Nor does it matter that the mansion house was located on land in which Gentry had only a life estate, this fact does not militate against a widow's right of quarantine in that portion of the land owned by the husband in fee. In Agan v. Shannon, 103 Mo. 661, it was distinctly recognized as an undoubted legal principle that the fact of the accident of the location of the mansion house on an adjacent forty not belonging to the home tract, *and to which the decedent had no title,* would not in any way affect the quarantine right of the widow in the plantation which her husband owned; and in doing this we followed the ruling made in Brown v. Brown's Adm'r, 68 Mo. 388, where it was held that notwithstanding the dwelling house of the husband was on an adjacent eighty, and not on the remaining part which he owned in fee, this would not prevent the widow from successfully asserting her right to a homestead in the residue of the farm which her husband owned."

The italics in the quotation are ours. It would seem in the Gentry case we have held that, although it turns out that the mansion house is on a tract of land to which decedent had no title whatsoever, yet if the lands actually owned by decedent were used in connection with this mansion house, then the widow was not debarred of her quarantine right. The fiction of the law that she shall remain quarantined in the mansion house with full possession of all its messuages, seems to have been eliminated by pure practical law in this Gentry case. In the Gentry case the

widow could not hold the mansion house after the death of her husband, because upon his death that property, which was held by him as tenant by the curtesy, immediately reverted to Gentry's children by a former wife and in them was the right of possession. The widow in that case was a second wife, and her right to quarantine could not have been based upon a right to remain (in quarantine) in the mansion house, because the death of the husband terminated such right. This, it occurs to me, was the occasion for the use of the italicized words above quoted. We at least held that Mrs. Gentry was entitled to her quarantine rights in the other lands, notwithstanding the fact that she did and could not hold the mansion house, which had been used in connection therewith. So considering the Gentry case I prefer not to concur in much of the discussion of paragraph four of the opinion. I concur in the result and other portions of the opinion.

*Lamm, P. J.*, concurs in these views.