## SARAH CLEMENTINE DECK et al., Appellants, v. ELLA WOFFORD et al.

Division One, June 2, 1920.

1. **QUARANTINE: Mansion House.** If before the husband's death the mansion house is destroyed by fire or flood or tornado or war and is not rebuilt or in existence at the time of his death, the widow has no quarantine in the plantation or messuages.

2. ————: ————: **Smokehouse.** A smokehouse or granary or stable or other outhouse, existing on the plantation at the time of the husband's death, but never used as a dwelling house by him or his family or any other person prior to his death, is not his mansion house at the time of his death; and although it may afterwards be enlarged or repaired and used as a residence by his widow and family, it it is not the husband's mansion house, and such use of it by her after his death does not entitle her to quarantine.

3. ———: **Right to Possession: Dower: Conveyance: Limitations.**
Where the widow is not entitled to quarantine at the time of her
husband's death and therefore has no right to possession as against
his heirs, a grantee, in an administrator's deed made by order
of court directing the land to be sold, but not sold according to
its directions and erroneously describing the lands, who goes into
possession, claiming to own the property under said deed, and
holds possession for the statutory period, obtains title by limi-
tation as against the heirs, and a deed from the dowress by which
she in terms conveys her dower to him, obtained after he entered
into possession, does not have the effect of suspending the run-
ning of the Statutes of Limitations; for being in adverse posses-
sion, under color of title and claim of ownership, at the time her
deed is made, and not claiming simply in right of the widow's
dower conveyed to him, his possession is adverse to the heirs.

4. ———: ———: ———: **Right to Convey: Limitations.** Prior to
the revision of the statutes in 1889, a widow without quarantine
had no right to the possession of the lands of her deceased husband
and could not convey unassigned dower to one having no interest
in the land until dower was assigned. And a deed made in 1878
conveying her unassigned dower in land to which she had no
quarantine right was a nullity and conveyed nothing to the
grantee, unless he was the terre-tenant, in which event it operated
only as a release of her dower.

*Held*, by GOODE, J., concurring in the result, with whom BLAIR,
P. J., concurs, that there being evidence to .support the find-
ing of the trial court that neither the husband nor his family
were living on the premises when he died in 1864, and the land
having been sold by the administrator by a void deed in 1872,
and the grantee having gone into possession under that deed
and he and his grantees having since been in possession, the
judgment of the trial court adjudging that the present grantee
is the owner and that the heirs are barred by limitations
should be affirmed.

Appeal from Dent Circuit Court.—*Hon. L. B. Wood-
side,* Judge.

Affirmed.

*Wm. P. Elmer* for appellants.

(1)  The administrator's deed is void, because the
order and report of sale do not describe the land in dis-
pute, but other lands.  Morgan v. Fitch, 125 Mo. 281;

Gilmore v. Thomas, 158 S. W. 577; Wofford v. Martin, 183 S. W. 603. The sale was not made in conformity to the order of sale. It authorized a private sale to January 2, 1872, and thereafter a public sale. The land was sold at private sale April 12, 1872. Id. (2) The widow held her quarantine and dower rights in the land notwithstanding she and her husband left the homestead temporarily and he died elsewhere. She returned and occupied the homestead as his widow before the execution of the administrator's deed. Gentry v. Gentry, 122 Mo. 216; Brown v. Brown, 68 Mo. 388. Being temporarily away from a homestead to avoid personal injury does not constitute an abandonment. Bleakley v. Blake, 153 Mo. 388. Leaving homestead on account of war, the husband dying and the widow returning to the home, did not constitute abandonment or forfeit homestead rights. Lake v. King, 85 Mo. 413. The same rule applies to the widow's quarantine and dower. Actual possession of husband is not essential to the right of dower attaching. Null v. Howell, 111 Mo. 277; Davis v. Evans, 102 Mo. 165. (3) The Statute of Limitations does not run against the heirs so long as the widow has the right to possession; no cause of action has accrued to them. Roberts v. Nelson, 86 Mo. 24; R. S. 1909, sec. 366; Collins v. Pease, 146 Mo. 139; Swearengin v. Stafford, 188 S. W. 98; Coulson v. La Plant, 196 S. W. 1147. Neither the possession of the widow nor of anyone else claiming under her is adverse to the heirs. Hicks v. Watson, 167 S. W. 534; Hauser v. Murray, 165 S. W. 384; Shoultz v. Lee, 168 S. W. 1146, 260 Mo. 719. There could be no adverse possession under the void administrator's deed. Melton v. Fitch, 125 Mo. 290.

*G. C. Dalton* and *S. R. Miner* for respondents.

(1) The right of quarantine exists only when the widow is living in the mansion house at the time of the death of her husband. McClurg v. Turner, 74 Mo. 46. At the time John B. Smith died he did not live on the

place in dispute. He had been away from it over three years, and his family had moved away more than two years before his death, therefore the widow had no quarantine right in the premises. G. S. 1865, sec. 21, p. 522. (2) Prior to the Revision of 1865, there was no homestead statute whatever in Missouri, and since John B. Smith died prior to the enactment of that statute and before same became a law, the question of the homestead rights is not in this case. G. S. 1865, p. 450. (3) A tax deed to the land in question was made to Masters in 1866, when the land was sold for delinquent taxes, and he took possession of said land in 1866, and held the actual, open notorious, adverse, exclusive and continuous possession of said land from that date till he sold it to Miller in 1873, at which date said Miller stepped into the shoes of said Masters and his adverse possession was tacked to that of said Masters. So Miller had the benefit of the adverse possession of said land from 1866 to the date he sold same to Ella Wofford in 1904. So she had the benefit of adverse possession of said land from 1866 to June 20, 1916, before any suit or action was filed for possession of this land. Therefore, Ella Wofford is vested with the absolute title in fee to said land by provisions of the Statute of Limitations. (4) The tax deed was color of title to the land in question, and was sufficient to start the Statute of Limitations running from and after 1866, the date Masters took possession of said land under his tax deed. 1 Bouvier's Law Dictionary (3 Rev.), p. 527. Any instrument of writing which purports to convey a certain tract of land, describing the same, is color of title. 1 Words and Phrases (2 Series), p. 769; Joplin Brewing Co. v. Payne, 197 Mo. 422, 114 Am. St. 770. (5) The continuity of the adverse possession of Masters to the land in question, taken under the tax deed in 1865, was not broken by accepting the administrator's deed in 1873. (a) It is very generally conceded that an adverse occupant may purchase an outstanding title without thereby interrupting the continuity of his possession. 2 C,

J. sec. 150, p. 105; Mather v. Walsh, 107 Mo. 121. (b) He has a right to quiet his possession and protect himself from litigation in any lawful mode that appears to him most advantageous and desirable. 2 C. J. sec. 150, p. 106, n. 76. (c) The adverse occupant does not rely upon his purchased title in preference to the one which he previously possessed. He joins the two together and possesses whatever title both may give him. Wiese v. Union Pac. R. R. Co., 77 Nebr. 40, affirmed 208 U. S. 234.

SMALL, C.—Appeal from the Circuit Court of Dent County. This is a suit in ejectment by the plaintiffs, who are the heirs of John B. Smith, deceased, against the defendants, Ella Wofford and husband, John Wofford, to recover possession, rents and profits and damages for withholding possession of a farm in said Dent County.

The answer, in addition to a general denial, claims title by adverse possession under the thirty-year and ten-year Statutes of Limitations.

The reply denied the new matter in the answer, and pleaded *res adjudicata,* in that the matters and things in issue had been determined in favor of the plaintiffs in this case in a cause between the parties theretofore brought by defendants against the plaintiffs in said court and appealed and decided by the Supreme Court.

At the trial, the plaintiffs introduced in evidence the petition, answer and reply in the former case, also the decree of the circuit court therein, and the mandate of this court. Said former suit was brought to the April term of said circuit court by Ella Wofford, as plaintiff, against Mary A. Smith, the widow (since deceased) and Sarah Clementine Deck, and the other heirs of John B. Smith, deceased, as defendants. It was a suit to quiet title to the property in question in which the plaintiff (Ella Wofford) claimed title by adverse possession under the thirty-year statute of limitations. The defendants (plaintiffs in this case) appeared in that case and filed answer denying plaintiffs' title and claiming

title as heirs and widow of said John B. Smith. The testimony was heard and the cause was tried on its merits. The circuit court found a verdict and entered judgment for the plaintiff, Ella Wofford. The defendants appealed to this court. We reversed the judgment of the circuit court on the ground that the Statute of Limitations, the only question involved in the case, had not run against the defendants, heirs of said Smith, remanded the case to proceed according to the views expressed in our opinion, and our mandate was to that effect. When the cause was returned to the circuit court, it was dismissed by the plaintiff, Ella Wofford. Thereupon, June 20, 1917, this suit was brought.

Our opinion in the former case is reported in the 183 S. W. 603. The opinion was by Bond, J., and, including the statement of facts, was as follows:

"This is an action filed by Ella Wofford, the plaintiff, to quiet title to 160 acres of land situated in Dent County, Missouri.

"In the year 1856, John B. Smith acquired from the Government title to 160 acres of land in Dent County, Mo., upon which he lived with his family until the outbreak of the Civil War. During the war the buildings on the land, except a smokehouse, were destroyed by soldiers, and Smith and his family went over to his uncle's home some distance off. In the following spring they moved again, this time over to one William Sevier's place, about one-half mile away, at which place his widow resided when he was killed in 1864, during the last year of the war.

"About a year after the husband's death his widow, Mary A. Smith, with her family moved back upon the land in question and stayed there about one year, occupying a smokehouse, the only building remaining on the land, as her residence, at the end of which time she went to Tennessee to live.

"On July 4, 1866, letters testamentary were granted on the estate of the husband, and on October 23, 1872, an order of sale was made which stated that Thomas

W. Howe, the administrator, was to sell the property at a private sale on or before the second Monday in January, 1872; otherwise at a public sale as directed. The land was sold April 3rd at a private sale to William Masters, which was contrary to the directions of the order of sale. The order of sale misdescribed the lands in suit by reciting that the land was situated in township 34 instead of 33.

"On November 28, 1873, William Masters, by a warranty deed, conveyed the land in controversy to John B. Miller, the father of the present plaintiff. In 1876, Mary A. Smith, the widow of John B. Smith, came back from Tennessee and wanted to sell to Miller her interest as dowress in the place, which interest Miller at first refused to buy, but after her application to the court to set off her dower, he paid her $100, in consideration of which she gave him a quitclaim deed conveying her dower in terms. Though some steps were taken preparatory to the setting off of the widow's interest no part of the land, so far as the evidence shows, was actually surveyed and set aside as her part; and after the purchase by Miller all proceedings in the matter came to an end.

"From that time on Mr. Miller continues with his daughter, the present plaintiff, in the quiet and undisturbed possession of the land up until his death, which occurred about eight years prior to the filing of this suit. Thereafter the land was held by the plaintiff and her husband under a deed from the father, John B. Miller.

"The defendants in this case are the heirs of John B. Smith and claim a fee-simple title to the estate, subject to the dower interest of Mary A. Smith.

"The case was tried at the April term of the Circuit Court of Dent County. A jury was waived by the parties and the case was submitted to the court for determination, who decreed that plaintiff was the owner in fee simple of the land in controversy.

"There is only one question, and that of law, in this case. It is conceded that the plaintiff has no title to the land, unless one created by the Statute of Limitations while it was held by her father and herself. This for the reason that her father, who deeded the land to the plaintiff, himself held under mesne conveyances from the purchaser at a void sale of the land by the administrator of J. B. Smith, whose title emanated directly from the Government, and the defendants are the wife and children of the patentee.

"Unless, therefore, the defendants (who are the heirs of the patentee of the land) have parted with their title by grant or legal divestiture (neither of which happened) or have lost it by lapse of time and per force of the Statute of Limitations, the decree below for the plaintiff was erroneous.

"On the 27th of November, 1878, the father of the plaintiff for $100 secured a quitclaim deed describing the land and reciting, viz., 'The interest herein conveyed being the dower interest of said Mary Smith in and to said lands as the widow of J. B. Smith, deceased,' which was duly executed by the dowress, Mrs. Smith. Before this happened Mrs. Smith had taken steps for the laying off of her dower, all of which were abandoned upon the sale; hence the effect of her deed was simply to convey her unassigned dower in the lands. Neither she nor her grantees could make their possession adverse to the heirs while the dower estate in the lands were unadmeasured or unassigned. [Melton v. Fitch, 125 Mo. loc. cit. 290, 28 S. W. 612, et cases cited.] . . . For until her death the heirs were not entitled to possession and could not have ejectment for the land since no dower was ever set apart therein for the widow who was alive and testified at the trial.

"The learned trial court seemed to think that this case was ruled by some of the views expressed in McClurg v. Turner, 74 Mo. 45, but that case was wholly different from the present. There the only issue involved related to the quarantine right of a widow to

occupy the mansion house and lands belonging thereto, until the assignment of dower under the statute. [R. S. 1909, sec. 366.] A statutory privilege distinct from and prior to the right of dower. It was ruled under the particular facts of that case showing that there was no mansion house on the land at the time of the death of the husband, that his widow could not defend by invoking the quarantine statute against an ejectment by the purchaser of the land under a valid judgment against her husband, for her statutory right was predicated upon the existence of a mansion house. Moreover, it appeared that the widow had bought the land from a third party who claimed adversely to the husband. These two aspects of the case only were adverted to in the opinion, and it conceded that the distinct dower rights of the widow would not be affected. The case therefore is wholly without bearing on the defenses in this case, that the lands in dispute were acquired by plaintiff's father by a conveyance to him of the dower estate of defendants' mother. That such estates as well as rights of quarantine are jealously guarded is ably stated by SHERWOOD, J., in Gentry v. Gentry, 122 Mo. 202.

"It is apparent from this glance at the point in judgment in McClurg v. Turner, supra, that it does not touch the issue here as to the right of a purchaser (or his grantee, the plaintiff) from the dowress to hold the lands subject thereto adversely to the heirs during the life of the widow.

"That this cannot be done is the settled law of this State. Yet it is the only point presented for review, for plaintiff's father has not been dead ten years before this suit; hence, if she were claiming in her own rights and not as his grantee, no estate could as yet be created by the Statute of Limitations."

The facts in evidence in this case were the same as those indicated in our opinion in the former case, with the additional testimony in this case, that in 1867, William Masters was in possession claiming to have purchased the land at tax sale, and so remained until Novem-

ber 28, 1873, when he conveyed the land to John B. Miller, by a warranty deed, as stated by Judge Bond in our former opinion, and that said Miller remained in possession from the time he obtained his warranty deed from Masters until 1904, after which the defendant in this case, Ella Wofford, his daughter, under a deed from him was in possession and claimed to own the property, and that her possession continued from that time until the filing of this suit.

In this case, the court below made the following finding of fact:

"While there is some discrepancy between the testimony of Mrs. Mary A. Smith and Reuben Burris as to where the family was living at the time of the death of John B. Smith, yet it appears to me from her testimony that while she was eighty-five years old, yet her mind seems reasonably clear as to the material facts in the case, and where they were living at the time of her husband's death and also in corroboration of her testimony as to the fact as to where she lived at the time of her son's death, and I find that her testimony in regard to these matters is correct and true and that John B. Smith and family lived on this place as their home at the beginning of the war; that he left and went into the Confederate Army and was killed during the last year of the war, which would be in the year 1864. That sometime during the war the soldiers burned the house and she left and went to Sinkin and lived there one winter, which was probably the winter of 1863 and 1864, and from there she moved about half a mile to William Sever's, and was living at Sever's when her husband was killed and stayed there that summer, and then moved back to the neighborhood of Wick Smith's place and lived there one winter, and the next summer moved back to the old place, fixed up the smokehouse and lived in it that summer, and the winter following her son James died and the next spring they moved from there up to Widow Chandler's, about a half mile away, and lived there that summer, and in the fall moved on Current River to Thomas

Smith's, and remained there until about Christmas, when her brother came for her and her children and took them back to Tennessee.

"That at the time of the death of John R. Smith, neither he nor his family were living on the place in controversy, and there was no dwelling house on the place, and nothing but an old smokehouse which a year or two afterwards she fixed up and moved into with her children, stayed awhile and then moved away from the farm."

In the former case there was no finding of fact by the trial court. In this case, the court gave the following instruction, to which the plaintiffs excepted:

"The court declares the law to be that the mere right of dower, existing in a widow, does not stop or prevent the running of the Statute of Limitations in favor of a stranger who is claiming the title to the same, and it is only when the right of quarantine exists, together with the right of dower, that limitation will not run against the heirs.

"The right of quarantine exists only when the widow is living in the mansion house at the time of the death of her husband.

"This construction was put upon the statute in the case of McClurg v. Turner, 74 Mo. 46, in the opinion of which Judge HENRY uses the following language:

"The language of Section 2205 implies the occupancy of the premises by the husband at the time of his death. Until dower be assigned, the widow may remain in, etc. This language would be wholly inapplicable to a possession and occupancy of the premises by the widow, which commenced after the husband's death. It is not a dower right, but a right given by the statute to one who has a dower right. The possession she is entitled to under Section 2205 is of 'the mansion house of her husband and plantation, until her dower be assigned.'

"I am unable to find where the ruling in this case has ever been modified or criticised and under the rule

laid down by Judge HENRY unless they were living on the place at the time of Smith's death, limitations would begin to run when Masters took possession of the premises.''

The court sitting as a jury, found a verdict and rendered judgment in favor of the defendants. After unsuccessfully moving for a new trial, the plaintiffs appealed to this court.

I.   Our conclusion, when the cause was here before, that the Statute of Limitations had not run against the plaintiffs in this case, who were the defendants in that, was seemingly based solely upon the assumption of

*Scope of Former Ruling.* fact that John B. Miller went into possession and held and claimed the land simply as the grantee of the dower interest of Mary A. Smith, which she attempted to convey to him by her deed of the 27th of November, 1878, and as said dower had never been admeasured, and the widow was still living; there was no adverse possession against the heirs of John B. Smith, and, therefore, whether or not there was a mansion house on the property at the time of his death was not necessary to determine and was not determined.

II.   The substance of the instruction given in this case, and now complained of by appellants, is, that unless Smith's family was "living on the place" at the time of Smith's death, limitations would begin to run against his heirs, when Masters took possession of the premises.

*Quarantine.* The court found, as a fact, that at the time Smith died, his family were not living on the premises, because the mansion house had been burned down and they had moved away.   There is no statement in the finding of fact when Masters took possession, but there was evidence that it was before his conveyance by warranty deed to John B. Miller, which was on November 28, 1873.

The lower court, therefore, on the trial of this case, after it was remanded by us, decided in favor of the

defendant, Ella Wofford, because it found, as a fact, that there was no mansion house on the property when Smith was killed, and, therefore, the widow had no right of quarantine, and the Statute of Limitations consequently commenced to run against Smith's heirs in favor of Ella Wofford's predecessors in title and possession, long prior to the date Mary A. Smith transferred her dower to John B. Miller, and thereafter continued to run in favor of said Miller and his grantee, Ella Wofford. We did not pass upon that question, when the case was here before. Consequently, our former opinion is not binding upon that point. [Keith v. Keith, 97 Mo. l. c. 231; Mangold v. Bacon, 237 Mo. l. c. 514.]

III. The quotation from McClurg v. Turner, 74 Mo. 45, in the instruction given by the court in this case, shows that under the statute in relation to the widow's quarantine, there must be a mansion house of the husband at the time of his death, upon or belonging to the

Mansion House. land in which such quarantine is claimed. If there is no such mansion house at that time, there is no quarantine. It is not sufficient that the land belonged to the husband at the time of his death, and the widow had dower therein and a mansion house was subsequently erected thereon by the widow. In this construction of the statute we concur.

In the case at bar, the mansion house in which Mary A. Smith's husband had resided burned down sometime before his death, and his wife and family had left the place. Neither he nor his family lived there at the time of his death. Mere temporary absence of the husband from home or the mansion house at the time of his death, would not be held to deprive the widow of her right of quarantine, but, if before the death of the husband, the mansion house is destroyed by fire or sword or flood or cyclone or otherwise, and is not rebuilt or in existence at the time of his death, it cannot be said to be his mansion house at the time of his death, and, hence, the widow would have no quarantine therein or in the plantation or messuages belonging thereto, for the ob-

Deck v. Wofford.

vious reason that there would be none such in existence.

IV.  In this case, however, it is contended by appellants' learned counsel, that the smokehouse was not destroyed, and that after Mr. Smith's death, his family returned and lived in the smokehouse, which they refitted sufficiently to be habitable, and that subsequently it was "built on to" by Ella Wofford, or her predecessors in title, and used as a dwelling or mansion house.  But, we hold, that a smokehouse or granary or a stable or other outhouses on the property at and before the husband's death, but never used as a dwelling by the husband or his family or any other persons in his lifetime, is not a mansion house of the husband at the time of his death, within the meaning of the statute, although it may afterwards be repaired or made habitable and used as a residence by his widow and family.  The building of a mansion house or trans- formation of a smokehouse into a mansion house on the property by the widow after her husband's death, would not be a mansion house of the husband at the time of his death. [McClurg v. Turner, supra; Givens v. Ott, 222 Mo. 395.]

*Smokehouse.*

We hold, therefore, that under the finding of facts, and the evidence in this case, there was no mansion house upon or connected with the property in question, when Mr. Smith died, and, therefore, his widow had no right of quarantine, but simply her right of dower therein.

V.  There being evidence that Ella Wofford's father, John B. Miller, her predecessor in title in 1873, went into possession and claimed to own the property under warranty deed from Masters, who was then in possession claiming title, the subsequent taking of a deed from Mary A. Smith by said John B. Miller in 1878 of her dower interest only, did not have the effect to suspend the Statute of Limitations from running against the plaintiffs, in this case, the heirs of John B. Smith.  [Mather v. Walsh, 107 Mo. 121.]

282 Mo.—37

The land in question not being at the time of her husband's death in any way connected with his mansion house, Mary A. Smith had no right of possession as against the heirs of her husband, but they were entitled to the possession thereof, and her conveyance in 1878 of her dower right did not confer upon her grantee, John B. Miller, the right to the possession of said land. If said Miller, at the time he took such conveyance, was in adverse possession, under color of title, and thereafter continued in such possession, claiming the ownership of the property, and not simply Mrs. Smith's right of dower, his possession was adverse to the heirs of John B. Smith, and the Statute of Limitations ran against them. Indeed, in 1878, a transfer by a widow of her unassigned dower rights in property not connected with her husband's mansion house at the time of his death, was a nullity, and conveyed nothing to the grantee, unless he was the terre-tenant, in which event, such transfer operated simply as a release of dower. This subject was fully considered in Sell v. McAnaw, 138 Mo. l. c. 273-4, where this court, per MACFARLANE, J., said:

"There was no evidence whatever that the disputed land was a part of the plantation on which was situated the mansion house of the deceased husband. The home of Crohan at his death was in another county, and this land was not used in any manner in connection with it. The widow of Crohan was not, therefore, entitled to the possession and use of it until her dower was assigned.

"Section 2205 (R. S. 1879) only gave her the right to remain in and enjoy the mansion house of her husband and the 'messuages and plantation thereto belonging' until the assignment of her dower. It gives her no right to the possession of all the land of her deceased husband in which she had a dower right. Her conveyance of the land did not therefore confer upon her grantee the right to possession. She could convey no greater right than she herself possessed.

"Whatever interest Crohan had in the land descended to his heirs, subject to the widow's right of dower. If he was entitled to the possession, and, as between the parties to this suit who claim under him we must assume that he was, the right on his death vested in his heirs.

"Until the revision of 1889 (Sec. 4514) a widow could not, at law, before assignment, alienate her dower right by conveyance or assignment to one holding no interest in the land. She could release her claim of dower to the terre-tenant so as to bar herself, but she could invest no other person with the legal title thereto, until it had been assigned. [2 Scrb. on Dower, sec. 42; 5 Cyclo. of Law, 906, and cases cited in each; Brawford v. Wolfe, 103 Mo. 400.]

"It follows that the deed from the widow to Smith passed no legal right of title in the land to the grantee. Defendants in the use they made of the land, can only be treated as trespassers unless they have thereby acquired the title thereto by adverse possession.

"It cannot be said that the acts of ownership exercised over the land by defendants were permissive, and not adverse to the claim of the heirs. The widow had no right she could confer upon her grantee. The deed conferred no right to possession, or to go upon the land and cut and remove timber therefrom. Defendants' acts of ownership were, consequently, hostile to the rights of plaintiffs."

In Givens v. Ott, 222 Mo. 395, while this court was evenly divided on the question whether there was a mansion house, in that case, within the meaning of the statute, there was no division on the proposition laid down in the opinion of Woodson, J., that if there was no mansion house connected with the property, there was no quarantine and no right to possession on the part of the widow simply by reason of her unassigned dower, and that in such case, if the widow takes possession, under a deed from a third party, giving her color of title to land in which she has such unassigned dower but no

right of quarantine, the Statute of Limitations runs in her favor against the heirs from the date of such deed.

We hold, therefore, that under the facts found and which the evidence tended to prove, in the case at bar, the title to the land in question was vested in the defendant, Ella Wofford, at the time this suit was brought by adverse possession under the Statutes of Limitations pleaded in her answer.

There was no error in the rulings of the court below, and its judgment is affirmed. *Brown* and *Ragland, CC.,* concur.

PER CURIAM:—The foregoing opinion of SMALL, C., is adopted as the opinion of the court. All of the judges concur, except *Woodson, J.,* absent; *Goode, J.,* concurs in separate opinion, in which *Blair, P. J.,* concurs.

GOODE, J. (concurring).—I concur in the result of this case for the reason that there was evidence to support the finding of the court below that neither John B. Smith nor his family was living on the premises in controversy when he died. *Blair, P. J.,* concurs herein.